(No. 53796.–

*In re* ROGER B., Appellant (Morgan M. Finley, Circuit Clerk, Appellee).

*Opinion filed March 18, 1981.*

SIMON, J., took no part.

Patrick T. Murphy, of Goldberg & Murphy, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, and John A. Dienner III, and Penny Nathan Kahan, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

The circuit court of Cook County dismissed the amended petition of plaintiff, Roger B., which sought a judgment declaring section 18 of the Adoption Act (Section) (Ill. Rev. Stat. 1977, ch. 40, par. 1522) unconstitutional. That statute places adoption records and original birth records under seal. The appellate court, in a two-to-one decision, affirmed. 85 Ill. App. 3d 1064.

Plaintiff argues before this court that the Section is invalid in that it (1) infringes upon a fundamental right, (2) creates a suspect classification, in violation of the equal protection clause of the United States Constitution, and (3) violates plaintiff's right to receive information.

The facts are uncontradicted. Plaintiff, who was born in 1949, filed an amended petition in the circuit court, asserting that his status as an adult adoptee who had feel-

ings of inadequacy and uncertainty as to his background permitted access to his adoption records. Alternatively, plaintiff alleged that the Section is unconstitutional. At the hearing, plaintiff testified that he had been searching for his biological family for three years. Plaintiff regarded himself as "emotionally, physically, and financially comfortable." He testified that his search was not based on any psychiatric or medical need. Rather, the search emanated from plaintiff's desire to know "information which pertains to [him] as a person." The trial court upheld the validity of the statute. It also found that the statute requires a showing of good cause, which plaintiff failed to establish. The appellate court affirmed, upholding the constitutionality of the Section. The court also held that adulthood, in and of itself, does not constitute good cause to allow access to sealed adoption records.

The Section provides in pertinent part:

> "Upon motion of any party to an adoption proceeding the court shall, or upon the court's own motion the court may, order that the file relating to such proceeding shall be impounded by the clerk of the court and shall be opened for examination only upon specific order of the court, which order shall name the person or persons who are to be permitted to examine such file." (Ill. Rev. Stat. 1977, ch. 40, par. 1522.)

A companion statute, sections 17(2)(a) and 17(4) of the Vital Records Act (Ill. Rev. Stat. 1977, ch. 111½, par. 73—17), provides that, after an adoption, the original birth certificate shall be sealed from inspection except upon court order.

Neither party disputes the trial court's finding that the statutory scheme allows the records to be unsealed upon a showing of good cause. The statute, unlike those of several other States (*e.g.,* New York Dom. Rel. Law sec. 114 (McKinney 1977)), does not explicitly provide a good-cause standard. However, the legislature has given the court authority to issue an order providing access to the

records. Although we find no Illinois cases interpreting the standard to be applied, we agree that the discretion conferred by the statute was intended to be exercised upon a showing of good cause.

Plaintiff contends that the right to know his own identity is a fundamental right. He argues that the Section infringes upon this right without serving a compelling State interest, thereby violating the equal protection clause of the Federal Constitution. Plaintiff maintains that the right to determine one's natural identity finds its basis under one's right to privacy. He relies on several Supreme Court cases involving familial relationships, rights of family privacy, and freedom to marry and reproduce: *Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (woman's right to terminate her pregnancy); *Eisenstadt v. Baird* (1972), 405 U.S. 438, 31 L. Ed. 2d 349, 92 S. Ct. 1029 (matters involving contraception); *Loving v. Virginia* (1967), 388 U.S. 1, 18 L. Ed. 2d 1010, 87 S. Ct. 1817 (freedom to marry); *Prince v. Massachusetts* (1944), 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438 (matters involving child rearing); *Skinner v. Oklahoma ex rel. Williamson* (1942), 316 U.S. 535, 86 L. Ed. 1655, 62 S. Ct. 1110 (the right to procreate).

These cases concern the most intimate areas of personal and marital privacy. The Supreme Court has been very hesitant in expanding the list of fundamental rights. (*San Antonio Independent School District v. Rodriquez* (1973), 411 U.S. 1, 29-33, 36 L. Ed. 2d 16, 40-43, 93 S. Ct. 1278, 1294-97.) In *San Antonio*, the Supreme Court, holding that the right to education is not a fundamental right, stated, "It is not the province of this Court to create substantive constitutional rights in the name of guaranteeing equal protection of the laws." (411 U.S. 1, 33, 36 L. Ed. 2d 16, 43, 93 S. Ct. 1278, 1297.) The court indicated that the key to discovery if a right is fundamental "lies in assessing whether there is a right

[that is] explicitly or implicitly guaranteed by the Constitution." (411 U.S. 1, 33-34, 36 L. Ed. 2d 16, 43, 93 S. Ct. 1278, 1297; see *Dandridge v. Williams* (1970), 397 U.S. 471, 485, 25 L. Ed. 2d 491, 502, 90 S. Ct. 1153, 1161 (the recognition of the fact that the administration of public welfare assistance involves the most basic economic needs of impoverished human beings did not render it a fundamental right).) We have found no case holding that the right of an adoptee to determine his genealogical origin is explicitly or implicitly guaranteed by the Constitution. Several courts, however, have found that the right asserted here is not a fundamental right. *Alma Society, Inc. v. Mellon* (2d Cir. 1979), 601 F.2d 1225, 1231-33; *Application of Maples* (Mo. 1978), 563 S.W.2d 760, 762-64; *Mills v. Atlantic City Department of Vital Statistics* (1977), 148 N.J. Super. 302, 309-10, 372 A.2d 646, 650.

In *Alma Society, Inc. v. Mellon*, the plaintiff adoptees similarly claimed that a statute allowing the sealing of adoption records, unless good cause is shown, violated their fundamental right to "personhood." The court upheld the statute, concluding that the right to unseal birth records does not come within any recognized category of privacy. After examining two Supreme Court cases, *Quilloin v. Walcott* (1978), 434 U.S. 246, 54 L. Ed. 2d 511, 98 S. Ct. 549 (upholding a Georgia statute allowing adoption of an illegitimate child without the father's consent), and *Zablocki v. Redhail* (1978), 434 U.S. 374, 54 L. Ed. 2d 618, 98 S. Ct. 673 (invalidating a Wisconsin statute that interfered with the fundamental right to marry), the court concluded that those two cases illustrate the necessity of looking at the entire family relationship. The court held that the right of an adoptee to discover his identity should not be considered exclusive of the interests of other family members. *Alma Society, Inc. v. Mellon* (2d Cir. 1979), 601 F.2d 1225, 1233. Accord, *Ap-*

*plication of Maples* (Mo. 1978), 563 S.W.2d 760, 763-64; *Mills v. Atlantic City Department of Vital Statistics* (1977), 148 N.J. Super. 302, 311-12, 372 A.2d 646, 651; *In re Sage* (1978), 21 Wash. App. 803, 806-07, 586 P.2d 1201, 1203.

Virtually every State statute affects important rights. (*San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 31, 36 L. Ed. 2d 16, 41, 93 S. Ct. 1278, 1295.) Although information regarding one's background, heritage, and heredity is important to one's identity, it does not fall within any heretofore delineated zone of privacy implicitly protected within the Bill of Rights. We believe the adoptee does not have a fundamental right to examine his adoption records.

Inasmuch as a fundamental right is not involved, the statute will be upheld if it is not arbitrary and bears a rational relationship to a legitimate State objective. *Village of Belle Terre v. Boraas* (1974), 416 U.S. 1, 8, 39 L. Ed. 2d 797, 803, 94 S. Ct. 1536, 1540; *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 17, 36 L. Ed. 2d 16, 33, 93 S. Ct. 1278, 1288; *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 120.

Section 18 and its related statutes represent a considered legislative judgment that confidentiality promotes the integrity of the adoption process. Confidentiality is needed to protect the right to privacy of the natural parent. The natural parents, having determined it is in the best interest of themselves and the child, have placed the child for adoption. This process is done not merely with the expectation of anonymity, but also with the statutory assurance that his or her identity as the child's parent will be shielded from public disclosure. Quite conceivably, the natural parents have established a new family unit with the expectation of confidentiality concerning the adoption that occurred several years earlier. (*Application of Maples*

(Mo. 1978), 563 S.W. 2d 760, 763; *In re Sage* (1978), 21 Wash. App. 803, 806, 586 P.2d 1201, 1203; *Mills v. Atlantic City Department of Vital Statistics* (1977), 148 N.J. Super. 302, 311, 372 A.2d 646, 651. See *In re Christine* (1979), —— R.I. ——, ——, 397 A.2d 511, 513.) In *Application of Maples,* the Missouri Supreme Court stated:

"[T]he state at the behest of those concerned undertook through the adoption process to sever the parental relationship, award custody and establish a new relationship of parent and child. Much of the information coming into the court's records during that process is for good reason treated as a confidence, offering a fresh start to the parties so that natural parents making this agonizing decision are assured the parent-child relationship will be completely severed, both legally and socially and may put behind the mistakes and misfortunes precipitating this fateful act. They are assisted in this traumatic experience by the knowledge that the records may be compromised only on order of court and that neither the child nor the adoptive parents may question why they consented to the adoption or the circumstances of the abandonment or neglect. If it were otherwise, the adopted child might reenter their lives with disastrous results. There must be finality for the natural parents and a new beginning; if there is a right of privacy not to be lightly infringed, it would seem to be theirs." 563 S.W.2d 760, 763.

These interests of the natural parents do not cease when the adoptee reaches adulthood. (*Alma Society, Inc. v. Mellon* (2d Cir. 1979), 601 F.2d 1225, 1236; *Mills v. Atlantic City Department of Vital Statistics* (1977), 148 N.J. Super. 302, 316, 372 A.2d 646, 653.) In *Stanley v. Georgia* (1969), 394 U.S. 557, 564, 22 L. Ed. 2d 542,

549, 89 S. Ct. 1243, 1248, the Supreme Court held that
" '*** the right to be let alone [is] the most comprehensive of rights and the right most valued by civilized man.'
[Citations.]"

Confidentiality also must be promoted to protect the right of the adopting parents. The adopting parents have taken into their home a child whom they will regard as their own and whom they will love, support, and raise as an integral part of the family unit. They should be given the opportunity to create a stable family relationship free from unnecessary intrusion. (*In re Christine* (1979), —— R.I. ——, ——, 397 A.2d 511, 513; *In re Sage* (1978), 21 Wash. App. 803, 806, 586 P.2d 1201, 1203; *Mills v. Atlantic City Department of Vital Statistics* (1977), 148 N.J. Super. 302, 307-08, 372 A.2d 646, 649; *In re Adoption of Spinks* (1977), 32 N.C. App. 422, 427, 232 S.E.2d 479, 483.) The Section creates a situation in which the emotional attachments are directed toward the relationship with the new parents. The adoptive parents need and deserve the child's loyalty as they grow older, and particularly in their later years. (*Application of Maples* (Mo. 1978), 563 S.W.2d 760, 764.) As stated in *Alma Society:*

"The adoptee's attainment of majority is a definite event in the adoptee's life; but it occurs independent of either the legally terminated natural family relationship or the legally assumed adoptive one and does not affect termination or continuation of those relationships." 601 F.2d 1225, 1231.

The State's concern of promoting confidentiality to protect the integrity of the adoption process is well expressed by the following excerpt from Klibanoff, *Genealogical Information in Adoption: The Adoptees Quest and the Law,* 11 Fam. L.Q. 185, 196-97 (1977):

"The primary interest of the public is to preserve the integrity of the adoptive process. That is, the continued

existence of adoption as a humane solution to the serious social problem of children who are or may become unwanted, abused or neglected. In order to maintain it, the public has an interest in assuring that changes in law, policy or practice will not be made which negatively affect the supply of capable adoptive parents or the willingness of biological parents to make decisions which are best for them and their children. We should not increase the risk of neglect to any child, nor should we force parents to resort to the black market in order to surrender children they can't care for.

*\*\**

No one has yet shown that decades of policy protecting the anonymity of the biological parents and the security from intrusion of the parent-child relationship after adoption have been misguided. Quite the contrary. The overwhelming success of adoption as an institution which has provided millions of children with families, and vice versa, cannot be easily attacked.

The public has a strong interest, too, in preserving the confidential non-public nature of the process. Public attitudes toward illegitimacy and parents who neglect or abuse children have not changed sufficiently to warrant careless disclosure of the circumstances leading to adoption.

But the public also has an interest in the mental health of children who have been adopted—in order that they not become burdens to society. Some provision for the relatively small group of adoptees whose psychological needs are compelling would appear necessary."

We note that only three States, Alabama, Florida and Kansas, grant the adoptee access to original birth records. Confidentiality is perceived to promote the efficacy of the adoption process in 42 States, where the statutes provide for sealed birth records. *Alma Society, Inc. v. Mellon* (2d Cir. 1979), 601 F.2d 1225, 1235.

The State certainly must protect the interest of the adoptee, as well as the rights of the natural and adopting parents. When the adoptee is a minor, there is no dispute that the sealed-record provisions serve this end. The child, in his new family environment, is insulated from intrusion

from the natural parents. The child is protected from any stigma resulting from illegitimacy, neglect, or abuse. The preclusion of outside interference allows the adopted child to develop a relationship of love and cohesiveness with the new family unit. Prior to adulthood, the adoptee's interest is consistent with that of the adopting and natural parents.

Upon reaching majority, the adoptee often develops a countervailing interest that is in direct conflict with the other parties, particularly the natural parents. The adoptee wishes to determine his natural identity, while the privacy interest of the natural parents remains, perhaps stronger than ever. The Section recognizes that the right of privacy is not absolute. It allows the court to evaluate the needs of the adoptee as well as the nature of the relationships and choices made by all parties concerned. The statute, by providing for release of adoption records only upon issuance of a court order, does no more than allow the court to balance the interests of all the parties and make a determination based on the facts and circumstances of each individual case.

We find the statute to be rationally related to the legitimate legislative purpose of protecting the adoption process. Consequently, the Section does not unconstitutionally infringe upon an adoptee's right to discover his own identity.

Plaintiff argues that the Section creates a suspect classification for which there is no compelling State justification, thereby violating the equal protection clause of the Constitution. He compares his classification as an adoptee to legislative classifications that have been held suspect, such as race (*Loving v. Virginia* (1967), 388 U.S. 1, 18 L. Ed. 2d 1010, 87 S. Ct. 1817), alienage (*Graham v. Richardson* (1971), 403 U.S. 365, 29 L. Ed. 2d 534, 91 S. Ct. 1848), national origin (*Korematsu v. United States* (1944), 323 U.S. 214, 89 L. Ed. 194, 65 S. Ct. 193), and classifications that have been analyzed as "quasi-suspect,"

such as illegitimacy (*Trimble v. Gordon* (1977), 430 U.S. 762, 52 L. Ed. 2d 31, 97 S. Ct. 1459) and sex (*Frontiero v. Richardson* (1973), 411 U.S. 677, 36 L. Ed. 2d 583, 93 S. Ct. 1764). Only race, alienage, and national origin have been definitively recognized as suspect classifications. Just as is true with respect to fundamental rights, the Supreme Court has been very hesitant in expanding the list of suspect classifications. See *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 28, 36 L. Ed. 2d 16, 40, 93 S. Ct. 1278, 1294; *Kahn v. Shevin* (1974), 416 U.S. 351, 355-56, 40 L. Ed. 2d 189, 193, 94 S. Ct. 1734, 1737. See also *Alma Society, Inc. v. Mellon* (2d Cir. 1979), 601 F.2d 1225, 1234; *In re Estate of Karas* (1975), 61 Ill. 2d 40, 50-51.

Again, the Supreme Court has not enunciated specific criteria by which a suspect class is determined, but has suggested that suspect classes are those that suffer from "an immutable characteristic determined solely by the accident of birth" and have had a history of the relegation of the class to an inferior status. *Frontiero v. Richardson* (1973), 411 U.S. 677, 684-86, 36 L. Ed. 2d 583, 590-91, 93 S. Ct. 1764, 1769-70.

The status of adoptee does not result at birth, it is derived from a legal proceeding, the purpose of which is to protect the best interest of the child. (Ill. Rev. Stat. 1977, ch. 40, par. 1525.) Such status, conferred by the Adoption Act, actually improves the position of the child by providing a home, support, a family unit, and loving care that might otherwise not be present. (See *Mills v. Atlantic City Department of Vital Statistics* (1977), 148 N.J. 302, 308, 372 A.2d 646, 649.) Further, the child inherits from the adopting parents. (Ill. Rev. Stat. 1977, ch. 110½, par. 2—4.) We find that section 18 of the Adoption Act does not create a suspect classification.

Inasmuch as a suspect classification is not involved, the State need only have a rational basis for the statutory

classification. (*San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 17, 36 L. Ed. 2d 16, 33, 93 S. Ct. 1278, 1288; *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 120.) In this case, there is at least a rational basis between the statutory classification and a legitimate State purpose.

As discussed earlier, the legislature perceived a need for confidentiality. This confidentiality performs the socially and legally vital role of balancing the interest of the child, the interest of the natural parents, and the interest of the adopting parents. The prohibition against seeing the records is not restricted to the adoptees. It applies equally to the adoptees, adopting parents, natural parents, and any curious third party who seeks to look at the record. Further, as stated earlier, the preclusion on viewing the records is not absolute. The court may, for good cause, order the records to be seen. Inasmuch as a rational relationship exists between the creation of the status of adoptee and the State's interest in promoting the adoption process, we find no unconstitutional infringement.

Plaintiff also argues that his constitutional right to receive information is violated by the Section. We disagree. Although the Constitution protects the right to receive information and ideas (*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.* (1976), 425 U.S. 748, 756-57, 48 L. Ed. 2d 346, 355, 96 S. Ct. 1817, 1823), the first amendment does not guarantee a constitutional right of special access to information not available to the public generally. (*Branzburg v. Hayes* (1972), 408 U.S. 665, 684, 33 L. Ed. 2d 626, 641, 92 S. Ct. 2646, 2658.) The information sought here is the product of the judicial process, gathered under the State's adoption laws. Control of records to support the highly desirable adoption scheme stands in contrast to the prevention of transfer of films (*Erznoznik v. City of Jacksonville*

(1975), 422 U.S. 205, 45 L. Ed. 2d 125, 95 S. Ct. 2268), ideas (*Stanley v. Georgia* (1969), 394 U.S. 557, 22 L. Ed. 2d 542, 89 S. Ct. 1243), and birth information (*Griswold v. Connecticut* (1965), 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678) in the cases cited by plaintiff. See *Application of Maples* (Mo. 1978), 563 S.W.2d 760, 762.

Just as we held that plaintiff's right to know his identity is not absolute, plaintiffs right to receive information cannot be considered at the exclusion of the right of the other concerned parties. (*Alma Society, Inc. v. Mellon* (2d Cir. 1979), 601 F.2d 1225, 1233; *Application of Maples* (Mo. 1978), 563 S.W.2d 760, 762; *Mills v. Atlantic City Department of Vital Statistics* (1977), 148 N.J. Super. 302, 312-13, 372 A.2d 646, 652.) As stated earlier, the Section does not totally deny plaintiff access to his birth records. It simply requires a court to determine that sufficient justification exists before releasing the information. This limitation, founded upon protecting the adoption process, is not an unconstitutional exercise of State power.

In summary, we find section 18 of the Adoption Act contains no equal protection violation of the Constitution resulting from an unwarranted infringement of a fundamental right or creation of a suspect classification. In addition, we find no constitutional violation of plaintiff's right to receive information.

In this case, plaintiff's attempt to have his adoption records released did not result from any physical or psychological medical need. It arose from plaintiff's desire to discover his natural identity. Further, the record does not show that the natural parents have ever waived their privacy right by consenting to divulgence of the information. We find that the trial court did not abuse its discretion in concluding that plaintiff's desire to obtain release of the records should not prevail over the potential in-

fringement of the rights of other parties. Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.