739 N.E.2d 1036 (2000)
317 Ill.App.3d 419
251 Ill.Dec. 103
In the Matter of J.D. (Jane Doe, Plaintiff-Appellant, v. John Noe and Jill Noe, Adoptive Parents; The Department of Children and Family Services, an Illinois State Agency; and Baby Fold, an Illinois Not-For-Profit Corporation, Defendants-Appellees).
No. 4-00-0001.
Appellate Court of Illinois, Fourth District.
November 21, 2000.
Rehearing Denied December 19, 2000.
*1038 David E. Neely (argued), Chicago, for Jane Doe.
Don C. Hammer (argued), Hayes, Hammer, Miles, Cox & Ginzkey, Bloomington, for John Noe.
James E. Ryan, Attorney General, Joel D. Bertocchi, Solicitor General, Patrick W. Carlson, Assistant Attorney General, Chicago, for Department of Children & Family Services.
Richard W. Zuckerman, Law Office of Richard W. Zuckerman, Peoria, for The Babyfold, Inc.
Justice STEIGMANN delivered the opinion of the court:
In June 1999, plaintiff, referred to herein as Jane Doe, filed a habeas corpus petition herein to void the trial court's June 1998 judgment granting adoption of her sister's minor child, referred to herein as J.D., to defendants, referred to herein as the Noes, in McLean County case No. 98-AD-10. In December 1999, the trial court dismissed Jane's petition. Jane appeals, arguing that (1) the adoption order is void for lack of jurisdiction; and (2) she has standing to challenge the adoption because she is a third-party beneficiary of an alleged oral agreement between her sister (referred to herein as Joyce Doe) and the Department of Children and Family Services (DCFS), providing that she would be allowed to adopt J.D. We affirm.

I. BACKGROUND
When J.D. was born in August 1993, he tested positive for cannabis and cocaine. Two days later, DCFS took him into protective custody and temporarily placed him in Jane's care. In September 1993, the trial court adjudicated J.D. a neglected minor; and in October 1993, DCFS became his guardian. Jane retained custody.
In January 1996, Joyce signed a final and irrevocable surrender of her parental rights as to J.D. and acknowledged her surrender before a juvenile court judge. In April 1996, the State filed a petition to terminate Joyce's parental rights. In July 1996, the trial court terminated Joyce's parental rights and gave DCFS the authority to consent to J.D.'s adoption. Although J.D. was then in Jane's care, she did not file any petition to adopt him.
In January 1997, DCFS removed J.D. from Jane's care because he had bruises consistent with those received from a spanking. DCFS determined that the abuse report was indicated and placed J.D. with other foster parents. In August 1997, the trial court found that the permanency goal of adoption had not been achieved and that it was in J.D.'s best interests to be placed immediately in an adoptive home. The court also terminated Jane's visitation with J.D.
In December 1997, the Baby Fold, a private agency, placed J.D. with John and Jill Noe. In February 1998, the Noes filed a petition to adopt J.D. Jane and her counsel learned of the pending adoption petition when they attended an unrelated March 1998 hearing and counsel for DCFS informed the court about J.D.'s adoptive status. However, Jane never filed a petition to adopt J.D., nor did she seek to intervene in the adoption proceeding. In May 1998, DCFS provided its written consent to J.D.'s adoption by the Noes. In June 1998, the Noes obtained an adoption judgment.
Jane urges us to consider several additional alleged facts: (1) she administratively appealed J.D.'s removal and the indicated abuse report, but she never received a "fair hearing" as required by DCFS regulations (89 Ill. Adm.Code § 337.120 (1996) (effective July 1, 1995)); (2) DCFS did not follow its policy and custom of staying all actions regarding a child pending a foster parent's administrative appeal; (3) she was not notified of any proceedings in the juvenile court that terminated her visitation rights; (4) DCFS refused to return J.D. to her care unless she admitted spanking him; (5) a juvenile court judge asked counsel for DCFS to seek advice from DCFS' *1039 regional counsel about how to expedite or "get around" Jane's administrative appeal; and (6) in December 1998, DCFS voluntarily "unfounded" the indicated report of abuse involving Jane and J.D. However, these allegations are not relevant to any of the dispositive issues in this appeal.
In June 1999, Jane filed the instant habeas corpus petition alleging that J.D. was "imprisoned" in the Noes' home. She argued that J.D.'s adoption was invalid because Joyce's surrender of her parental rights was subject to an oral agreement with DCFS to allow Jane to adopt J.D. The trial court dismissed the petition because Jane did not have standing to seek J.D.'s custody and could not collaterally attack the adoption judgment. This appeal followed.

II. ANALYSIS

A. Jurisdiction
Jane characterizes the adoption judgment as void for lack of jurisdiction. She argues that the trial court did not have jurisdiction because J.D. was not "available for adoption" as defined by section 1(F) of the Adoption Act (750 ILCS 50/1(F) (West 1998)). We disagree.
A child is available for adoption if the child has been surrendered for adoption to an agency and the agency has thereafter consented. 750 ILCS 50/1(F)(a) (West 1998). The trial court may enter an adoption judgment if it finds that (1) the adoption is for the welfare of the child and (2) either a valid consent exists or no consent is required. 750 ILCS 50/14(e) (West 1998). An agency may make a valid consent if the child has been surrendered for adoption to such agency. 750 ILCS 50/8(b)(3) (West 1998).
A valid adoption is a complete defense to a petition for habeas corpus. People ex rel. O'Connor v. Cole, 322 Ill. 95, 96, 152 N.E. 554, 554 (1926). While habeas corpus is an appropriate means to collaterally attack an adoption order where that order is void for want of jurisdiction (Greco v. Chicago Foundlings Home, 38 Ill.2d 289, 291, 230 N.E.2d 865, 867 (1967)), the scope of inquiry in such a proceeding is limited to determining whether the trial court possessed jurisdiction (Gebhardt v. Warren, 399 Ill. 196, 199, 77 N.E.2d 187, 189 (1948)). Prior to invoking habeas corpus relief, a petitioner must show a prima facie legal right to custody of the child. Greco, 38 Ill.2d at 292-93, 230 N.E.2d at 867.
In this case, J.D.'s biological mother, Joyce, voluntarily surrendered her parental rights to J.D. by executing, under section 10(C) of the Adoption Act (750 ILCS 50/10(C) (West 1998)), a final and irrevocable surrender to an agency for purposes of adoption. The form of that surrender complied with the requirements of section 10(C) of the Adoption Act, and Joyce acknowledged her surrender before a judge (see 750 ILCS 50/10(I) (West 1998)).
J.D. was available for adoption because Joyce surrendered J.D. to DCFS for purposes of adoption and DCFS consented to J.D.'s adoption by the Noes. Therefore, the adoption court had jurisdiction to enter an adoption judgment.

B. Standing
Jane argues that she has standing as a third-party beneficiary to specifically enforce the terms of an alleged oral contract of adoption between DCFS and Joyce. Jane maintains that Joyce executed a general surrender of her parental rights in exchange for DCFS' promise to consent to J.D.'s adoption by Jane. As a result, Jane claims that she was vested with DCFS' consent to adopt J.D. by operation of law, even though DCFS did not execute a consent in her favor. Thus, she contends that she does not need to void or revoke Joyce's surrender to attack the adoption judgment. We disagree.
DCFS gained the power to consent to J.D.'s adoption by the Noes based on Joyce's surrender of her parental rights. See 750 ILCS 50/8(b)(3) (West 1998). Her surrender provided:

*1040 "That I hereby grant to [DCFS] * * * full power and authority to place such child with any person or persons it may in its sole discretion select to become the adopting parent or parents and to consent to the legal adoption of such child by such person or persons * * *."
See 750 ILCS 50/10(C) (West 1998).
Jane argues that Joyce's unequivocal surrender is limited by an alleged oral agreement that DCFS consent to J.D.'s adoption by Jane. Her argument is akin to one previously used by a natural parent seeking to revoke a consent in In re Joseph B., Jr., 258 Ill.App.3d 954, 967-68, 197 Ill.Dec. 56, 630 N.E.2d 1180, 1189-90 (1994) (holding that a final and irrevocable consent to adoption was limited by an express intent to apply only to a specific prospective adoptive parent even though no adoption petition was pending). In Joseph B., the natural mother expressly stated during the hearing at which the consent was elicited that she would voluntarily sign the consent "as long as [J.B.'s] placement is with [Z.S.]" Joseph B., 258 Ill.App.3d at 967-68, 197 Ill.Dec. 56, 630 N.E.2d at 1190.
However, Joseph B. is distinguishable. Joyce signed a "final and irrevocable surrender to an agency for purposes of adoption" (see 750 ILCS 50/10(C) (West 1996) (effective until January 1, 1998)) as opposed to a "final and irrevocable consent to adoption" (750 ILCS 50/10(A) (West 1996) (effective until January 1, 1998)). These forms are not interchangeable. Joseph B., 258 Ill.App.3d at 964, 197 Ill.Dec. 56, 630 N.E.2d at 1187. The language granting an agency power "to place such child for adoption and to consent to the legal adoption of such child" (750 ILCS 50/10(C) (West 1996) (effective until January 1, 1998)) is not contained in the consent form. Joseph B., 258 Ill.App.3d at 965, 197 Ill. Dec. 56, 630 N.E.2d at 1188.
Further, Joyce had no power to execute a consent. J.D. was a ward of the court when Joyce signed the surrender. In Joseph B., the child was not a ward of the court at the time that the natural parent signed a consent to adoption. Joseph B., 258 Ill.App.3d at 956, 960, 197 Ill.Dec. 56, 630 N.E.2d at 1182, 1184. A parent may not direct a child's placement either through private placement or by executing a consent when that child is a ward of the court. In re Adoption of L.R.B., 278 Ill.App.3d 1091, 1093-94, 215 Ill.Dec. 950, 664 N.E.2d 347, 348-49 (1996).
Jane maintains that Joyce intended her to adopt J.D., and she asserts that DCFS agreed to consent to that adoption. However, the record shows no evidence to support that entire claim. She has not provided a transcript of the hearing at which Joyce surrendered her parental rights, and Joyce did not testify in the present proceeding. Instead, Jane refers to a June 1996 DCFS "client service plan narrative" that mentioned, "[Joyce], the natural mother, has surrendered her parental rights so that her sister, [Jane], may proceed with [J.D.'s] adoption." Although this statement suggests Joyce's expectation, it does not condition her surrender or in any way indicate that DCFS agreed to consent to J.D.'s adoption by Jane. Also, Jane refers to Joyce's parental affidavit which contains the question, "Has anyone threatened or made promises to you to encourage the surrender of the child?" Jane alleges that someone other than Joyce crossed out her "yes" response and noted the change with Joyce's initials. However, Jane has not supported her allegation with a transcript of the proceeding in which Joyce acknowledged her surrender in open court. In any case, nothing in this statement necessarily indicates that DCFS made any promises to Joyce.
Even if DCFS agreed to consent to Jane's adoption of J.D., that agreement would not prevent DCFS from also consenting to J.D.'s adoption by the Noes. Under these circumstances, we refuse to apply equitable estoppel to bar DCFS from consenting to J.D.'s adoption by anyone other than Jane. See Joseph B., 258 Ill.App.3d at 977-78, 197 Ill.Dec. 56, 630 *1041 N.E.2d at 1196 (a finding of equitable estoppel against a public body is disfavored). Jane had sufficient opportunity to file a petition to adopt J.D. before the Noes obtained an adoption judgment. She had actual notice of the pending adoption proceedings. In March 1998, Jane learned in open court of a pending petition to adopt J.D. However, she never filed a petition to adopt J.D., and she never sought to intervene in the pending adoption proceeding. She claims that two indicated reports against her and her pending administrative appeals of those reports precluded her from filing a petition to adopt J.D. We disagree. Jane could have filed a petition to adopt J.D. at any time before the Noes obtained their adoption judgment because J.D. was then a "related child" as defined in section 1(B) of the Adoption Act (750 ILCS 50/1(B) (West Supp.1997)). Accordingly, she would not have needed to allege in her petition that she had custody of J.D. or that DCFS consented. See 750 ILCS 50/5(C) (West 1998).
Thus, Jane cannot attack the adoption judgment without seeking to void or revoke Joyce's surrender. However, she does not have standing to do so. When contesting the validity of adoption proceedings, "no other person can complain that the rights of the father or mother have been infringed." Sullivan v. People ex rel. Heeney, 224 Ill. 468, 476, 79 N.E. 695, 697 (1906). Nothing in section 11 of the Adoption Act explicitly provides standing to void or revoke a surrender signed by someone else. See 750 ILCS 50/11 (West 1998).

C. Twelve-Month Limitation
Jane's challenge to the trial court's jurisdiction is also time-barred. Section 11(a) of the Adoption Act provides, in relevant part:
"No action to void or revoke a consent to or surrender for adoption, including an action based on fraud or duress, may be commenced after 12 months from the date the consent or surrender was executed." 750 ILCS 50/11(a) (West 1998).
Jane cannot seek to enforce an oral contract for adoption or, alternatively, seek to set aside an adoption judgment after the time for challenging the surrender has passed. See Street v. Hubert, 141 Ill. App.3d 871, 876, 96 Ill.Dec. 215, 491 N.E.2d 29, 32 (1986). Any jurisdictional challenge to the validity of an adoption judgment, regardless of the means utilized, is time-barred when premised on a challenge to the validity of a consent or surrender more than 12 months after it was executed. In re Adoption of Baby Girls Mandell, 213 Ill.App.3d 670, 674, 157 Ill. Dec. 290, 572 N.E.2d 359, 361 (1991).
In this case, Jane's attack on the adoption judgment constitutes a challenge to the validity of the surrender. Because Jane filed her habeas corpus petition in June 1999, 3 1/2 years after Joyce executed the surrender, section 11 of the Adoption Act (750 ILCS 50/11 (West 1998)) bars her claim.

D. Other Grounds
We recognize that DCFS has also argued in favor of affirming the trial court on the following grounds: (1) Jane cannot assert that Joyce's surrender was induced by fraud because she did not allege in the complaint that the judge before whom Joyce acknowledged her surrender perpetrated the fraud; (2) Joyce could not bypass the authority of the courts and DCFS, J.D.'s guardian, to select an adoptive placement for J.D., a ward of the court; (3) Jane had no standing under section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/601(b)(2) (West 1998)) to seek custody of J.D. after the adoption judgment because J.D. was then in the custody of the Noes, his adoptive parents; (4) DCFS did not enter into a "contract for adoption" with Joyce because it had no authority to do so; (5) Jane had no constitutional right as a former foster parent to have J.D. returned to her; and (6) nothing that DCFS or the court did or failed to do undermined the *1042 validity of the adoption judgment. Although these arguments have merit, we need not address them because the grounds that we have considered are sufficient to affirm the trial court's judgment.

III. CONFIDENTIALITY IN ADOPTION-RELATED PROCEEDINGS
Because this petition was filed in the adoption proceeding, we choose to use pseudonyms in accordance with section 18(d) of the Adoption Act (750 ILCS 50/18(d) (West 1998)). Section 18 of the Adoption Act provides in part as follows:
"Records confidential. * * *
(b) The court call of adoption proceedings shall not identify any of the parties by name. The parties may be identified by initials or pseudonyms. The case shall be identified by its general number. The names of the lawyers representing the parties may appear on the court call, and the type of application that is being made to the court may also be identified.
(c) All adoption records maintained by each circuit clerk shall be impounded in accordance with the procedures provided by the Illinois Supreme Court's General Administrative Order on Recordkeeping and shall be opened for examination only upon specific order of the court, which order shall name the person or persons who are to be permitted to examine the file. Certified copies of all papers and documents contained in any file so impounded shall be made only on like order. The guardian ad litem for a minor sought to be adopted shall have the right to inspect the court file without leave of court during the pendency of the proceeding. The attorney of record for the petitioners and other parties may inspect the file only with leave of court. The petitioners to the adoption, the attorney of record for the petitioners, and the guardian ad litem of the person who is the subject of the proceeding shall be entitled to receive certified copies of the order of adoption in the proceeding at any time within 30 days after the entry of the judgment of adoption without order of court. After 30 days from the entry of the judgment of adoption, no copies may be obtained without prior order of court, but good cause is not necessary to be shown by one of the petitioners to the adoption.
(d) If an appeal is taken from an adoption proceeding, the papers filed in the court of review and the opinion of the reviewing court shall not identify the true names of the parties; instead, initials or pseudonyms shall be used to identify the parties." 750 ILCS 50/18 (West 1998).
Section 18 of the Adoption Act represents a considered legislative judgment that confidentiality promotes the integrity of the adoption process. In re Roger B., 84 Ill.2d 323, 329, 49 Ill.Dec. 731, 418 N.E.2d 751, 754 (1981). Confidentiality protects the interests of biological parents, adopting parents, and adopted minors. Roger B., 84 Ill.2d at 332, 49 Ill.Dec. 731, 418 N.E.2d at 755.
This legislative purpose applies to the instant proceeding. The legislature's intent that adoption records remain confidential would be frustrated if names of the parties were disclosed here on appeal. We recognize that the underlying petition was filed on the trial court's MR calendar and not in the adoption case number. However, the parties ought not be able to do indirectly what the legislature has prohibited them from doing directly; that is, the parties filed pleadings below naming everyone involved in a case number where the records do not fall under section 18(c) of the Adoption Act (750 ILCS 50/18(c) (West 1998)). The legislature may choose to address this omission by future legislation. In the meantime, the courts must endeavor to protect, as best they can, the confidentiality of all parties.
*1043 Thus, we recommend that parties involved in similar appeals from adoption-related proceedings (1) use pseudonyms and (2) redact and substitute the pseudonyms for any identifying information contained in documents appended to their briefs, as these are public documents in this court's records. That portion of the Illinois Supreme Court's General Administrative Order on Recordkeeping in the Circuit Courts, dated May 20, 1968, that provides procedures by which adoption records maintained by the circuit clerks are to be impounded or sealed (Administrative Office of the Illinois Courts, Manual on Recordkeeping § L (2d ed.1996)), as discussed in section 18(c) of the Adoption Act (750 ILCS 50/18(c) (West 1998)), does not apply by its terms to the reviewing court, nor does any supreme court rule address impounding such records in reviewing courts.

IV. CONCLUSION
For the reasons stated, we affirm the trial court's judgment.
Affirmed.
COOK, P.J., and MYERSCOUGH, J., concur.