18 P.3d 100

**Christy and Steven JACKSON, wife and husband, Petitioners–Appellants,**

v.

**Sandi TANGREEN, Respondent–Appellee.**

**No. 1 CA–CV 99–0542.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 26, 2000.

Review Denied May 23, 2001.

Jones & Rosenberg by Kenton D. Jones, Prescott, Attorneys for Petitioners–Appellants.

Law Offices of Robert L. Frugé by Robert L. Frugé, Prescott, Attorney for Respondent–Appellee.

## OPINION

RYAN, Judge.

¶ 1 In this appeal, we again hold that Arizona's grandparent visitation statute, Ariz.Rev.Stat.Ann. ("A.R.S.") § 25–409 (2000), is constitutional. We also hold that the statute does not unconstitutionally distinguish between two-parent adoptions and stepparent adoptions by permitting continuing grandparent visitation when a child is adopted by a stepparent.

1. Although the Jacksons' motion was labeled a "Motion for Reconsideration," in substance, it was an affirmative petition for termination of Tangreen's visitation rights. Jurisdiction on appeal from the denial of this petition is thus proper under A.R.S. section 12–2101(C), (E) (1994).

2. Section 25–409(F) reads in part as follows:

## BACKGROUND

¶ 2 Robert and Christy Thon were married in July 1992. The couple had two children, a boy born in 1992 and a girl born in 1993. In 1994, Christy petitioned the court for dissolution of the marriage, and the couple was later granted a divorce with Christy retaining primary custody of the children. In April 1997, Robert Thon's mother, Sandi Tangreen, petitioned the court for visitation with her grandchildren. After hearing oral argument on the petition, the court granted Tangreen visitation with the children.

¶ 3 In February 1998, Christy's new husband, Steven Jackson, petitioned to adopt the two children. Christy and her former husband both consented to the adoption. In July 1998, Tangreen filed a petition for continuation of visitation, which the trial court granted. Steven Jackson's petition to adopt the children was subsequently granted, and the order of adoption was entered in August 1998. The Jacksons then filed a petition to terminate Tangreen's visitation rights, arguing that A.R.S. section 25–409 is unconstitutional.[1] The Jacksons appeal from the trial court's denial of their petition to terminate visitation.

## DISCUSSION

¶ 4 The Jacksons raise several arguments that we distill to two principal issues. First, the Jacksons argue that A.R.S. section 25–409 is unconstitutional on its face because it impermissibly interferes with their fundamental rights as parents in the care, custody, and control of their children. Second, the Jacksons argue that A.R.S. section 25–409(F)[2] conflicts with Arizona's adoption statute, A.R.S. § 8–117(A)(1999), and thus A.R.S. section 25–409(F) impermissibly distinguishes between two-parent adoptions and stepparent adoptions. We conclude that A.R.S. section 25–409 is constitutional. We also conclude that A.R.S. section 25–409(F)

All visitation rights granted under this section automatically terminate if the child has been adopted or placed for adoption.... This subsection does not apply to the adoption of the child by the spouse of a natural parent if the natural parent remarries.

does not unconstitutionally distinguish between two-parent adoptions and stepparent adoptions.

### The Constitutionality of A.R.S. Section 25–409

■ ¶ 5 We review the constitutionality of a statute *de novo*. *See City of Tucson v. Woods*, 191 Ariz. 523, 530, 959 P.2d 394, 401 (App.1997). In conducting that review, we presume that the statute is constitutional and must construe it, if possible, to give it a constitutional meaning. *See State Comp. Fund v. Symington*, 174 Ariz. 188, 193, 848 P.2d 273, 278 (1993). The party alleging the constitutional violation bears the burden of proving it. *Eastin v. Broomfield*, 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977). We will declare legislation unconstitutional only if we are clearly convinced that it conflicts with the Arizona or United States Constitution. *See State v. Arnett*, 119 Ariz. 38, 48, 579 P.2d 542, 552 (1978).

■ ¶ 6 In *Graville v. Dodge*, this court held that Arizona's grandparent visitation statute, A.R.S. § 25–409, did not unconstitutionally infringe upon a parent's fundamental right to control child rearing. 195 Ariz. 119, 125, ¶ 23, 985 P.2d 604, 610 (App.1999). We concluded that because A.R.S. section 25–409 "neither substantially interferes with nor heavily burdens parental rights," it need only be rationally related to a legitimate state purpose. *Id.* at ¶ 24, 985 P.2d 604. We then held that A.R.S. section 25–409 was "rationally related to furthering the state's legitimate interest in enabling children to become responsible adults by fostering relationships between grandchildren and their grandparents ." *Id.* at 126, ¶ 27, 985 P.2d at 611.

¶ 7 After oral argument in this appeal, the United States Supreme Court issued its decision in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In *Troxel*, the Supreme Court affirmed the Washington Supreme Court's ruling that Washington's nonparental visitation statute was unconstitutional. *Id.* at 63, 120 S.Ct. at 2059. We granted the Jacksons' request for additional briefing on whether the Court's decision in *Troxel* affected this appeal.

¶ 8 In their supplemental brief, the Jacksons contend that our analysis in *Graville* no longer controls in light of the Supreme Court's decision in *Troxel*. Tangreen, on the other hand, contends that *Troxel*'s holding is limited to the Washington statute and does not affect the constitutionality of A.R.S. section 25–409. We conclude that *Troxel* does not affect our holding in *Graville*.

■ ¶ 9 In *Troxel*, no majority opinion emerged. However, six of the justices agreed with the state supreme court that the Washington statute was unconstitutionally overbroad because it allowed " 'any person' to petition for forced visitation of a child at 'any time' with the only requirement that the visitation serve the best interests of the child." *Id.* (quotations omitted); *see also id.* at 67, 72, 120 S.Ct. at 2061, 2064 (plurality opinion), at 74, 120 S.Ct. at 2065 (Souter, J., concurring), at 79, 120 S.Ct. at 2068 (Thomas, J., concurring). Four of these six justices also found that the Washington statute was unconstitutional as applied. *Id.* at 71, 120 S.Ct. at 2064.

¶ 10 Two factors support our conclusion that the Supreme Court's holding in *Troxel* has no impact on A.R.S. section 25–409. First, although the Court found the Washington statute's language too broad to pass constitutional muster, it refused to find nonparental visitation statutes unconstitutional *per se*. *Id.*

¶ 11 Second, A.R.S. section 25–409 is much more narrowly drawn than the Washington statute in *Troxel*. In contrast to the Washington law, Arizona's nonparental visitation statute is limited to grandparents and great-grandparents. A.R.S. § 25–409(A), (B). In addition, the court may order visitation over parental objections only if the marriage of the parents has been dissolved for at least three months, one of the parents of the child is deceased or missing, or the child was born out of wedlock. *Id.* at (A)(1)–(3). Further, the statute requires the court to evaluate "all relevant factors" as well as five specific factors to determine if visitation serves the best interests of the child. *Id.* at (C)(1)–(5). Thus, A.R.S. section 25–409 stands in stark contrast to the "breathtakingly broad"

Washington statute. *Troxel,* 530 U.S. at 67, 120 S.Ct. at 2061.

¶ 12 Nevertheless, the Jacksons argue that certain language in *Troxel* compels a finding that A.R.S. section 25–409 violates their fundamental due process right to make decisions concerning the raising of their children. We disagree and conclude that Arizona's statute satisfies the due process concerns articulated in *Troxel.*

¶ 13 The Court in *Troxel* focused on two principle factors in concluding that the Washington statute, as applied, violated the mother's "fundamental right to make decisions concerning the care, custody, and control of her [children]." *Id.* at 71, 120 S.Ct. at 2063. First, no one alleged and no court found the mother to be unfit. *Id.* at 67, 120 S.Ct. at 2061. The Court explained that a fit parent is presumed to act in the child's best interests, and thus courts "must accord at least some special weight to the parent's own [visitation] determination." *Id.* at 69, 120 S.Ct. at 2062. In *Troxel,* the Washington trial court did not give any special weight to the mother's visitation decisions. *Id.* at 68–69, 120 S.Ct. at 2061–62. Instead, the trial court based its decision on its own presumption that third-party visitation would benefit the child, effectively forcing the mother to disprove the trial court's presumption. *Id.* at 69, 120 S.Ct. at 2062. Second, the mother had assented to some meaningful visitation even before the filing of any visitation petition or subsequent court intervention. *Id.* at 71, 120 S.Ct. at 2063. Thus, she did not seek to deny visitation altogether; she merely sought to limit it. *Id.* Nevertheless, the trial court failed to accord significant weight to the mother's prior assent to visitation. *Id.* These factors, combined with the trial court's "slender findings" in favor of the visitation order, convinced a plurality of the Court that the Washington statute did no more than permit the trial court to substitute its own judgment for that of a fit parent. *Id.* at 72, 120 S.Ct. at 2064. As a result, the Court concluded that the Washington statute, as applied, "exceeded the bounds of the Due Process Clause." *Id.* at 68, 71–72, 120 S.Ct. at 2061, 2063–64.

¶ 14 We believe Arizona's statute does not exceed the "bounds of the Due Process Clause." Section 25–409 requires Arizona courts to give weight to the parent's visitation decisions. For example, the court must assess "[t]he motivation of the person denying visitation." A.R.S. § 25–409(C)(3). It must also consider "[t]he motivation of the requesting party" and "[t]he historical relationship, if any, between the child and the person seeking visitation." *Id.* at (C)(1), (2). Also, the court must assess the amount of visitation requested and determine the impact that the visitation will have on the child's customary activities. *Id.* at (C)(4). As we concluded in *Graville,* these procedural safeguards "show[ ] that the legislature was conscious of parents' superior right to the custody and care of their children." 195 Ariz. at 127, 985 P.2d at 612 (quoting *West v. West,* 294 Ill.App.3d 356, 228 Ill.Dec. 794, 689 N.E.2d 1215, 1221 (1998)). Moreover, as subsections (C)(1) through (C)(4) suggest, our statute applies only in cases in which a parent has denied visitation, not merely limited it. Thus, by applying the statute as written, Arizona courts do not violate the Due Process Clause.

¶ 15 Because *Troxel* does not stand for the proposition that nonparental visitation statutes are *per se* unconstitutional, and because A.R.S. section 25–409 satisfies the due process concerns identified in *Troxel,* we reaffirm our holding in *Graville* that A.R.S. section 25–409 is constitutional.

### Arizona's Adoption Statute and A.R.S. Section 25–409(F)

¶ 16 The Jacksons' second contention presents two related arguments. First, they claim that A.R.S. section 25–409(F) conflicts with the policy underlying A.R.S. section 8–117(A). Second, the Jacksons assert that A.R.S. section 25–409(F) impermissibly distinguishes between two-parent adoptions and stepparent adoptions. We conclude that the legislature intended that A.R.S. section 25–409(F) supersede the policy behind A.R.S. section 8–117(A) as it relates to grandparent visitation after stepparent adoptions. We also conclude that the legislature rationally distinguished between two-parent adoptions

and stepparent adoptions in the context of grandparent visitation.

¶ 17 We begin our analysis with two principles in mind. First, adoption is a statutorily created concept, one that was unknown at common law. *In re Estate of Ryan*, 187 Ariz. 311, 312, 928 P.2d 735, 736 (App.1996); *Pima County Juv. Action No. B–7087*, 118 Ariz. 437, 438, 577 P.2d 723, 724 (App.1977), *aff'd*, 118 Ariz. 428, 577 P.2d 714 (1978). Second, because adoption is "a statutory creation entirely subject to legislation," it is within the legislature's power to "define and regulate adoption." *Estate of Ryan*, 187 Ariz. at 312, 928 P.2d at 736.

¶ 18 Section 8–117 defines the legal relationship between parents and child upon the entry of an order of adoption. After adoption, the relationship between the adopted child and the new parents is the same "as though the child were born to the adoptive parent in lawful wedlock." A.R.S. § 8–117(A). Therefore, the adopted child can inherit property from the child's new parents, and the new parents can inherit property from the adopted child. *Id.* The relationship between the adopted child and the persons who were his parents before the decree of adoption is severed, and all "legal consequences of the relationship cease to exist, including the right of inheritance." *Id.* at (B).

¶ 19 Under A.R.S. section 25–409(F), visitation granted to grandparents or great-grandparents "automatically terminate[s] if the child has been adopted or placed for adoption." But, the legislature included a specific exception for "the adoption of the child by the spouse of a natural parent if the natural parent remarries." The Jacksons argue that this exception conflicts with the policy behind A.R.S. section 8–117(A). In our opinion, the legislature legitimately exercised its power to define the status of children in relation to their biological and adoptive families when it amended Arizona's grandparent visitation statute to permit continued grandparent visitation after adoption by a stepparent.

¶ 20 When enacted in 1983, the grandparent visitation statute was codified at A.R.S. section 25–337.01 and subsection (D) provided: "[a]ll visitation rights granted under this section automatically terminate if the child has been adopted or placed for adoption. . . ." 1983 Ariz.Sess.Laws, ch. 109, § 1. This subsection was challenged in *In re Marriage of Herreras*, 159 Ariz. 511, 768 P.2d 673 (App. 1989), after a grandmother's visitation was automatically terminated following the adoption of her grandchildren by their father's new wife. In affirming, this court found that the legislature had clearly provided for termination of grandparent visitation upon adoption, concluding that "public policy requires recognition that an adoption decree creates a set of new relationships with the adoptive parents and that old ties must be broken." *Id.* at 512, 768 P.2d at 674 (citing *Browning v. Tarwater*, 215 Kan. 501, 524 P.2d 1135 (1974)).[3]

¶ 21 In 1992, the legislature amended A.R.S. section 25–337.01(D) to add the last sentence, exempting from the provisions of that subsection cases in which the child is adopted by the spouse of the natural parent.[4] 1992 Ariz.Sess.Laws, ch. 139, § 1. We presume that in so doing, the legislature was aware of our prior interpretation of A.R.S. section 25–337.01(D). *See, e.g., Wareing v. Falk*, 182 Ariz. 495, 500, 897 P.2d 1381, 1386 (App.1995) (noting that it is well settled that the legislature is presumed to know existing law when it enacts a statute). We also presume that this amendment was intended to specifically address our interpretation and, in effect, legislatively overrule it. *See McCandless v. United S. Assurance Co.*, 191 Ariz. 167, 174, 953 P.2d 911, 918 (App. 1997) (stating that when the legislature amends an existing statute, the court pre-

---

3. In apparent response to *Browning*, the Kansas legislature in 1984 amended its grandparent visitation statute to provide that adoption of a child by the spouse of a surviving parent would not defeat the biological grandparent's visitation rights. *See Sowers v. Tsamolias*, 262 Kan. 717, 941 P.2d 949, 951 (1997).

4. In 1996, A.R.S. section 25–337.01 was renumbered as A.R.S. section 25–409, 1996 Ariz.Sess. Laws, ch. 192, § 2, and in 1997, subsection (D) was renumbered as subsection (F). 1997 Ariz. Sess.Laws, ch. 45, § 1.

sumes the legislature intended some change in existing law). Because it is within the legislature's power to define the status of children vis-á-vis their biological and adoptive families, *see Estate of Ryan,* 187 Ariz. at 313, 928 P.2d at 737, we conclude that the last sentence of A.R.S. section 25-400(F) supersedes the policy expressed in A.R.S. section 8–117(A) as it relates to grandparent visitation when a stepparent adopts the child of the natural parent.

■ ¶ 22 The Jacksons, however, contend that A.R.S. section 25–409(F) unconstitutionally distinguishes between two-parent adoptions and stepparent adoptions. They argue that A.R.S. section 25–409(F) affords Steven Jackson a "lesser degree" of parenthood by virtue of his adoption of his spouse's minor children as opposed to a "higher degree" of parenthood he would have had under the statute if he had married someone who was not the children's mother and then adopted the children. In essence, the Jacksons' argument is an equal protection claim that the statute impermissibly classifies adoptive parents by the type of adoption. We conclude that the statute's classification does not violate the Equal Protection Clause of either the Arizona or federal constitution.

■ ¶ 23 As discussed, adoptive parents' rights exist only because the legislature created them. *Anguis v. Superior Court,* 6 Ariz.App. 68, 72, 429 P.2d 702, 706 (1967). Nevertheless, the legislature must act evenhandedly when it grants benefits to one group and denies them to another. *Tanner Cos. v. Superior Court,* 144 Ariz. 141, 146, 696 P.2d 693, 698 (1985). "Thus, the legislature may discriminate between classes only if all those in a given class are treated equally and the classifications are not unreasonable." *Id.* (emphasis omitted). The court will uphold a law that implicates either a suspect classification or a fundamental right only if the law is necessary to achieve a compelling state interest. *Wigglesworth v. Mauldin,* 195 Ariz. 432, 438, ¶ 19, 990 P.2d 26, 32 (App.1999). But, "when a law does not substantially infringe upon a person's fundamental rights we examine the challenged statute under the rational basis standard of review. That is, we will uphold the law if it is reason-

ably related to a legitimate state objective." *Graville,* 195 Ariz. at 125, ¶ 22, 985 P.2d at 610 (citing *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)).

■ ¶ 24 Neither party claims that adoptive parents are a suspect class. But the Jacksons attempt to engraft *Troxel's* reiteration that parents have a fundamental right to "the care, custody, and control of their children," 530 U.S. at 64, 120 S .Ct. at 2060, onto Arizona's adoption scheme. They urge us to conclude that an adoptive stepparent's statutory right to control the rearing of his adopted child is coextensive with a natural parent's fundamental right. Accordingly, the Jacksons ask us to strictly scrutinize A.R.S. section 25–409(F) and find it unconstitutional because it classifies adoptive parents by the nature of the adoption.

¶ 25 The Jacksons' argument fails for two reasons. First, only Justice Thomas would have applied strict scrutiny to the statute in *Troxel. See id.* at 80, 120 S.Ct. at 2068 (Thomas, J., concurring). None of the other five opinions explicitly stated the level of scrutiny that it applied. Second, *Troxel* dealt with grandparents' visitation imposed by a court on the natural mother of a child born out of wedlock who wanted to restrict it but not deny it. Thus, the Court was presented only with the extent of nonparental visitation in light of a natural parent's fundamental right in a due process context. *Troxel* did not address how an adoptive stepparent's statutory rights are like a natural parent's fundamental right in an equal protection context. Therefore, *Troxel* cannot stand for the proposition that A.R.S. section 25–409(F) is necessarily subject to strict scrutiny.

¶ 26 Because we need not apply strict scrutiny, this court's analysis in *Graville* still controls. In *Graville,* we held that because A.R.S. section 25–409 only permits visitation in limited circumstances, it does not substantially infringe on the fundamental parental right to control a child's upbringing. 195 Ariz. at 125, ¶ 23, 985 P.2d at 610. Thus, to be constitutional, A.R.S. section 25–409(F) need only be rationally related to a legitimate

state purpose. To succeed in proving A.R.S. section 25–409(F) unconstitutional, the Jacksons must negate every possible rational basis for permitting grandparent visitation after a child is adopted by the spouse of a natural parent who remarries. *See Heller v. Doe,* 509 U.S. 312, 320, 324, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

¶ 27 The classification in A.R.S. section 25–409(F) survives rational basis scrutiny. In upholding A.R.S. section 25–409 in *Graville,* we concluded that the state has a legitimate interest in "promoting healthy family relationships that enable children to become well-adjusted, responsible adults," including "the continuation of caring relationships . . . among grandchildren and their grandparents." 195 Ariz. at 125, ¶ 26, 985 P.2d at 610. After a two-parent adoption, however, the state's interest in promoting healthy relationships between grandchildren and their biological grandparents is outweighed by the need to make a clean break with the child's past. *Cf. In re Maricopa County Juv. Action No. JA–502394,* 186 Ariz. 597, 599, 925 P.2d 738, 740 (App.1996)(Kleinschmidt, J., concurring). But this limitation does not prohibit the legislature from rationally concluding that a stepparent adoption is materially different from a two-parent adoption in that a stepparent adoption does not involve the same need to make a clean break with the child's past.

¶ 28 The Illinois Supreme Court discussed the diminished need for a clean break in stepparent adoptions in *Lingwall v. Hoener,* 108 Ill.2d 206, 91 Ill.Dec. 166, 483 N.E.2d 512, 516 (1985). The *Lingwall* court stated that "[i]n adoptions involving strangers, the primary policy concern has traditionally been with maximizing the pool of potential adoptive parents. . . ." *Id.* Complete termination of the rights of the natural parents guarantees "that the adoptive parents will have 'the opportunity to create a stable family relationship free from unnecessary intrusion.'" *Id.* (quoting *In re Roger B.,* 84 Ill.2d 323, 49 Ill.Dec. 731, 418 N.E.2d 751 (1981)). In contrast, "the act of becoming a stepparent most often occurs without regard to adoption and in spite of regular visitations between the child and the noncustodial natural parent."

*Id.* While a subsequent adoption by a stepparent terminates the rights and obligations of the natural parent, "[t]ermination of the parental relationship is . . . a legal fiction since no act of law can nullify a biological relationship." *Id.* In light of these differences between two-parent and stepparent adoptions, the court found no reason to extend this legal fiction to terminate "a grandparental relationship unless it is in the child's best interest to do so." *Id.*

¶ 29 Other courts have likewise recognized a diminished need for a clean break in stepparent adoptions. The Iowa Supreme Court reasoned that the

" 'fresh start' policy . . . is much less compelling where, as here, the child is adopted only by a stepparent. In a very real sense, in such an adoption, the status of the child changes very little. A natural parent remains a parent. The child's home does not change. The adults caring for him or her are the same. In many cases the child's name will not change. If there is any real change, it is primarily in the status of the adopting parent."

*In re A.C.,* 428 N.W.2d 297, 300 (Iowa 1988) (quoting *Patterson v. Keleher,* 365 N.W.2d 22, 25 (Iowa 1985)); *accord Hicks v. Enlow,* 764 S.W.2d 68 (Ky.1989); *Kanvick v. Reilly,* 233 Mont. 324, 760 P.2d 743 (1988); *Mimkon v. Ford,* 66 N.J. 426, 332 A.2d 199 (1975); *Hedrick v. Hedrick,* 90 N.C.App. 151, 368 S.E.2d 14 (1988); *see also In re Marriage of Aragon,* 764 P.2d 419 (Colo.Ct.App.1988); *In re Groleau,* 585 N.E.2d 726 (Ind.Ct.App. 1992); *Howell v. Rogers,* 551 So.2d 904 (Miss. 1989); *Rigler v. Treen,* 442 Pa.Super. 533, 660 A.2d 111 (1995). Accordingly, the legislature could have rationally concluded that grandparent visitation previously permitted by a trial court under A.R.S. section 25–409 could continue after a stepparent adoption even though such visitation would terminate after a two-parent adoption.

¶ 30 Because the legislature could have rationally concluded that the distinction between two-parent and stepparent adoptions warrants differential treatment regarding grandparent visitation, and because that differential treatment furthers the legitimate state interest of supporting caring relation-

ships between family members, A.R.S. section 25–409(F) does not violate the principles of equal protection and is thus constitutional.

## CONCLUSION

¶ 31 We reaffirm our holding in *Graville* that A.R.S. section 25–409 is constitutional on its face. We further hold that A.R.S. section 25–409(F) supersedes the policy considerations of A.R.S. section 8–117(A) and that it does not unconstitutionally distinguish between two-parent adoptions and stepparent adoptions. Accordingly, we affirm.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, and JON W. THOMPSON, Judge.

