80 P.3d 775

**Robin Marie DOWNS, Respondent–Appellee,**

v.

**Mary Ann SCHEFFLER fka Mary Ann Manning, Third Party Petitioner–Appellant.**

**No. 1 CA–CV 02–0562.**

Court of Appeals of Arizona, Division 1, Department E.

Dec. 4, 2003.

Robin Marie Downs (Thacker), Phoenix, Respondent–Appellee in Propria Persona.

Wilson–Clark, P.C. By Karen A. Schoenau, Phoenix, Attorneys for Third Party Petitioner–Appellant.

## OPINION

SNOW, Judge.

¶ 1 Mary Ann Scheffler, the paternal grandmother of Kortnee M., an eleven-year-old child, appeals a trial court's order confirming Kortnee's mother, Robin Marie Downs, as the child's sole legal custodian. For the reasons stated below, we vacate the family court's decision and remand to allow the court to make the specific findings required by Arizona Revised Statutes ("A.R.S.") sections 25–403(A) and (J) (Supp. 2003), and to allow Scheffler to fully cross-examine the Conciliation Services evaluator as to all the reasons for her conclusion that it would be in Kortnee's best interests to be in Downs' custody. We also remand to allow the family court to consider Scheffler's request for grandparent visitation with Kortnee.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Kortnee was born in August 1991 to parents who never married. Both parents and Kortnee lived with Scheffler for a short time, but in December 1991 Downs and Kortnee left Scheffler's home. That same month, Kortnee's father petitioned the court for sole custody of Kortnee. Instead, Downs was awarded sole custody with Kortnee's father receiving supervised parenting time and Scheffler receiving grandparent visitation. In early 1992, Downs and Kortnee moved back with Scheffler. By the end of August 1992, Downs moved out of Scheffler's home and Scheffler took over Kortnee's care and support, although Downs still had sole legal custody. Downs resumed regular contact with Kortnee in 1999, but Kortnee remained in the physical custody of Scheffler, who continued to support Kortnee without receiving any support payments from either of Kortnee's parents.

¶ 3 In 2000, both parents consented to Scheffler's appointment as Kortnee's guardian. In February 2001, after Downs sought to move Kortnee into her new home, Scheffler petitioned the court to grant her legal custody pursuant to A.R.S. § 25–415 (2000), dealing with custody proceedings by persons other than the legal parents. After the parties participated in mediation, the court adopted the mediation agreement requiring that Kortnee spend every other week with Downs. Five months later, Downs sought to rescind the mediation agreement and the trial court subsequently held an evidentiary hearing on Scheffler's petition for custody.

¶ 4 At the evidentiary hearing, both Scheffler and Downs testified. In addition, Scheffler called Kortnee's therapist, Dr. Janet Davidson, who opined that it would be in Kortnee's best interests to be in the legal custody of Scheffler, with whom she had lived for many years. Scheffler also called Cathi Culek, a Conciliation Services evaluator. Culek had prepared a conciliation services assessment for the court, concluding that it was in Kortnee's best interests that Downs retain sole legal custody with Scheffler receiving visitation. During her testimo-

ny, Culek advised the court that she had formed her opinion based in part on information that she would only reveal in the judge's chambers, without Scheffler present, because she thought "it would seriously jeopardize [Kortnee's] mental, emotional and physical safety." Similarly, Culek's assessment report expressly stated that she was not setting forth all the reasons for her custody recommendation "in order to protect [the child]." Although the court admitted the report, it did not meet with Culek *ex parte* nor did it allow Scheffler's counsel to cross-examine Culek as to all the reasons for her report's conclusion.

¶ 5 After the evidentiary hearing, the family court concluded that it was in Kortnee's best interests to remain in Downs' sole legal custody. It also concluded that Scheffler did not overcome the statutory presumption in favor of parental custody, and that Scheffler did not establish that it would be significantly detrimental to Kortnee to remain in Downs' custody.[1] The family court granted Kortnee's father parenting time of one weekend per month and the first two weeks in July, to be supervised by Scheffler. Scheffler did not receive any separate visitation time. She filed a motion for a new trial, a motion to stay the custody order, and as an alternative, a request for grandparent visitation should the court affirm its custody decision. Downs did not respond to any of these motions. The trial court denied both motions and failed to address Scheffler's request for visitation. Scheffler timely appeals. We have jurisdiction pursuant to A.R.S. § 12–2101(C) (2003).

## DISCUSSION

¶ 6 On appeal, Scheffler asserts that the trial court abused its discretion in: (1) failing to make specific factual findings underpinning its custody determination as required by A.R.S. § 25–403(A) and (J); (2) refusing to permit her to cross-examine Culek on all the reasons for Culek's conclusion that it would be in Kortnee's best interests to remain in the legal custody of Downs; and (3) failing to

1. In later post-hearing proceedings, the family court terminated Scheffler's guardianship and ordered Scheffler to surrender physical custody of Kortnee to Downs.

consider Scheffler's alternative request for visitation.[2]

## A. The Trial Court Did Not Make Sufficient Factual Findings.

■ ¶ 7 Arizona's public policy makes the best interests of the child the primary consideration in awarding child custody. *Hays v. Gama*, 205 Ariz. 99, 102, ¶ 18, 67 P.3d 695, 698 (2003) ("We have repeatedly stressed that the child's best interest is paramount in custody determinations."). Section 25–403(A) enumerates nine specific factors that the court must consider in making a determination concerning a child's best interests. *See* A.R.S. § 25–403(A) ("The court shall determine custody, either originally or on petition for modification, in accordance with the best interests of the child. The court shall consider all relevant factors including [the nine factors enumerated in the subsection].").[3]

¶ 8 Subsection 25–403(J) further requires the court to "make specific findings on the record about all relevant factors *and* the reasons for which the decision is in the best interests of the child." A.R.S. § 25–403(J) (emphasis added). Accordingly, in addition to making specific findings on the record concerning the reasons why the decision is in the best interests of the child (which should include the statutory best interests factors), § 25–403(J) also requires the court to make specific findings on the record about any other factors relevant to its custody decision. *Cf. McGovern v. McGovern*, 201 Ariz. 172, 177, ¶ 15, 33 P.3d 506, 511 (App.2001) (when

determining child's best interests under grandparent visitation statute, court is obliged to consider "all relevant factors," not merely those enumerated in the statute); *Jackson v. Tangreen*, 199 Ariz. 306, 309, ¶ 11, 18 P.3d 100, 103 (App.2000) (same).

■ ¶ 9 We have previously held that a custody decision without the specific findings required by § 25–403 is deficient and, as a matter of law, constitutes an abuse of the family court's discretion. *In re Marriage of Diezsi*, 201 Ariz. 524, 526, ¶ 5, 38 P.3d 1189, 1191 (App.2002). In light of *Diezsi*, Scheffler contends that the family court, which made no factual findings supporting its custody determination, abused its discretion as a matter of law. Downs contends, however, that the court was not obligated to make specific findings in this case because § 25–403 applies only to custody contests between the child's legal parents. She argues that § 25–415, which controls custody contests when someone other than the legal parent is seeking custody, does not require the formal findings mandated by § 25–403.

¶ 10 We do not agree. Section 25–415 does contain additional statutory requirements when a person other than a legal parent seeks to obtain custody of a child. For example, § 25–415 provides for the summary dismissal of a custody petition brought by one other than a legal parent if the petitioner fails to preliminarily establish certain statutory prerequisites with factual specificity.[4] *See* A.R.S. § 25–415(A); *Thomas v. Thomas*, 203 Ariz. 34, 37, ¶ 16, 49 P.3d 306, 309 (App.2002) ("Subsection (A)(2) requires

2. Scheffler also asserts on appeal that the trial court erred in determining she failed to rebut the statutory presumption in favor of legal parent custody. In light of our resolution of the other issues, we do not consider that question.

3. The factors include: (1) the parent's wishes regarding custody; (2) the child's wishes regarding custody; (3) the child's relationship with his parents, siblings and other persons who may affect the child's best interests; (4) the child's adjustment to home, school and community; (5) the mental and physical health of all persons involved; (6) which parent is more likely to allow the child meaningful and continuous contact with the other; (7) the identity of the primary care provider for the child; (8) the nature and extent of coercion used by a parent in obtaining

an agreement regarding custody; and (9) whether a parent has complied with domestic education program requirements. *See* A.R.S. § 25–403(A).

4. A petitioner must preliminarily establish in the pleadings that: (1) the non-legal parent filing the petition stands *in loco parentis* to the child; (2) remaining or being placed in the custody of either legal parent who wishes to obtain or retain custody would be significantly detrimental to the child; (3) the court has not decided the child's custody within the previous year (unless potential harm to the child exists); and (4) the child's legal parents are not married, are in the process of being divorced or separated, or one of the legal parents is deceased. *See* A.R.S. § 25–415(A).

that a petition by a non-legal parent be summarily dismissed unless the pleadings establish [the statutorily required elements].”). Such a summary dismissal does not require the detailed factual findings, made on the record, that accompany a decision in which a custody award is made after consideration of the evidence.

¶ 11 Once the court decides the pleadings are sufficient and proceeds to examine the merits of the custody petition, however, § 25–415(B) imposes a statutory presumption “that it is in the child's best interest to award custody to a legal parent because of the physical, psychological and emotional needs of the child to be reared by the child's legal parent.” A.R.S. § 25–415(B). To overcome this presumption, the petitioner “must show by clear and convincing evidence that awarding custody to a legal parent is not in the child's best interests.” *Id.* Thus, to determine whether a petitioner has overcome the statutory presumption in favor of a custody award to a legal parent, the court is obliged to consider the best interests of the child.

¶ 12 While § 25–415 repeats neither the mandatory best interests factors of § 25–403(A) nor the requirement for specific factual findings on the record set forth in § 25–403(J), those subsections need not be repeated to be applicable. By its own terms, in determinations regarding the best interests of a child, subsection 25–403(A) obliges the court to consider at least the nine mandatory factors outlined in that section. While a few of the best interests factors in § 25–403 pertaining to parents may not be implicated in a case in which someone other than a legal parent seeks custody, nothing about the section purports to limit its scope to custody disputes between legal parents.

¶ 13 Section 25–403(J) requires that the court enumerate all factors relevant to its ultimate custody determination on the record. Like § 25–403(A), § 25–403(J) by its plain terms applies to all contested custody cases, not merely those between a child's parents. A.R.S. § 25–403(J) (“In a contested custody case, the court shall make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child.”).

Thus, even were the court to base its custody determination on factors other than those set forth in § 25–403(A), the court is nonetheless obliged to set forth specific factual findings on the record concerning all factors relevant to its determination.

¶ 14 As we have already observed, we interpret § 25–415 in the context of the overall statutory scheme regulating custody “with the goal of achieving consistency among related provisions.” *Thomas,* 203 Ariz. at 37, ¶ 15, 49 P.3d at 309 (citing *Prudential v. Estate of Rojo–Pacheco,* 192 Ariz. 139, 148, 962 P.2d 213, 222 (App.1997)). Thus, when § 25–415 requires the court to evaluate what would be in the child's best interests (albeit with a heightened standard of proof), we read the statutory language requiring an evaluation of the child's best interests in harmony with the requirements of § 25–403(A) and (J).

¶ 15 In this case, after an evidentiary hearing, the court determined not only that Scheffler had failed to rebut the statutory presumption in favor of awarding custody to the legal parent, but that it was in the child's best interests to remain in the custody of Downs. The court also determined that Scheffler had not ultimately established one of the four pleading requirements set forth in § 25–415(A)—that “[i]t would be significantly detrimental to the child” to remain in Downs' legal custody. However, the court's decision was not supported by any factual findings.

¶ 16 Pursuant to the custody statutes, the court cannot make determinations about Kortnee's best interests without considering the factors listed in § 25–403(A). Nor could the court determine that Scheffler failed to rebut the presumption in favor of parental custody without having considered these same factors. Thus, in this case, the court was obliged to make, and to place on the record, its findings with respect to the best interests factors set out in § 25–403. *Diezsi,* 201 Ariz. at 526, ¶ 4, 38 P.3d at 1191.

¶ 17 The court's failure to make findings is not excused by its determination that one of the initial statutory pleading requirements of § 25–415(A)—that it would be significantly detrimental for Kortnee to remain in her

mother's custody—was not established. If a petitioner fails to plead specific facts sufficient to preliminarily establish one of the elements required by § 25–415(A), the court is obliged by that statute to summarily dismiss the petition without further proceedings. *See Thomas,* 203 Ariz. at 37, ¶ 16, 49 P.3d at 309. However, once the petition sets forth sufficient facts to justify proceedings beyond the pleading stage, the court is required by § 25–403(J) to make findings as to all factors relevant to its ultimate custody decision. The court did not summarily dismiss the pleadings here but made a custody determination after a hearing on the merits. The court may not decide a custody petition on the merits without findings, even when a basis for its custody award is that the petitioner failed to establish an initial statutory pleading element. We further note that a determination on the merits that a particular custody choice would or would not be "significantly detrimental" to a child also requires an evaluation of the child's best interests, and itself cannot be accomplished without reference to the factors set forth in § 25–403(A).

¶ 18 Downs offers no suggestion, based on the statute or otherwise, that the legislature intended to exempt the family court from making specific findings of fact supporting the court's decision in custody contests brought by persons other than legal parents. Aside from the provisions of § 25–415(A), which permit the court to summarily dismiss such petitions when they fail to comply with statutory requirements, we find none.

¶ 19 In this case, the court did not summarily dismiss the petition, but nevertheless made no specific findings on the record about the relevant factors involved in its custody award. As a result, its findings were insufficient as a matter of law and we remand to allow the trial court to make the findings required under A.R.S. § 25–403(A) and (J), but only after further proceedings involving witness Culek, as discussed below, have concluded.

### B. The Trial Court Erroneously Limited Cross–Examination.

■ ¶ 20 The court based its custody decision on statutory standards concerned with Kortnee's best interests. Nonetheless, it refused to allow Scheffler to question the court-appointed evaluator regarding all the reasons for her conclusion that maternal custody was in Kortnee's best interests. Scheffler contends that the trial court erred by refusing to permit her to inquire into the basis of the assessment's conclusion. We agree.

¶ 21 Court-appointed experts are subject to cross-examination. *See* Ariz. R. Evid. 706(a) (stating that "the witness may be called to testify by the court or any party. The witness shall be subject to cross-examination by each party, including a party calling the witness."). During cross-examination, an expert may "be required to disclose the underlying facts or data" of her opinion. Ariz. R. Evid. 705. In addition, we recently stressed that "Arizona has a long-favored practice of allowing full cross-examination of expert witnesses, including inquiry about the expert's sources, relations with the hiring party and counsel, possible bias, and prior opinions." *Ariz. Indep. Redistricting Comm'n v. Fields,* 206 Ariz. 130, 143, ¶ 43, 75 P.3d 1088, 1101 (App.2003); *see also State v. Swafford,* 21 Ariz.App. 474, 486, 520 P.2d 1151, 1163 (1974) (stating that once an expert offers his opinions, he "invites investigation into the extent of his knowledge, the reasons for his opinion including facts and other matters upon which it is based and which he took into consideration and may be subjected to the most rigid cross-examination concerning his qualifications and his opinion and its sources").

¶ 22 Downs argues that any limitation on cross-examination was harmless error because Scheffler had to first establish that Downs was an inappropriate custodial parent before Scheffler could inquire into the basis of the custody assessment. The court apparently agreed. In denying Scheffler's request to cross-examine Culek concerning all of the underlying reasons for her report's conclusion, it noted: "We're not really talking about two fit parents here which one is the more appropriate. We're talking clear and convincing burden and best interest. I think we're kind of flying all around without really getting to [Downs'] inappropriateness."

¶ 23 However, nothing in the statute necessarily requires Scheffler to show that Downs is an inappropriate parent to overcome the presumption in favor of legal parent custody. Rather, according to § 25–415(B), Scheffler must overcome the presumption in favor of parental custody by clear and convincing evidence that it would not be in Kortnee's best interests for the court to award custody to Downs. And, according to the requirements of § 25–415(A), Scheffler bears at least some burden of establishing that it would be significantly detrimental to Kortnee to remain in her mother's custody.

¶ 24 As a practical matter such exacting standards may be most frequently met by establishing the unfitness of a parent. However, in this case, when Kortnee has lived only with Scheffler for the great majority of her life even though Downs had legal custody, it may be possible for Scheffler to establish by clear and convincing evidence that maternal custody is not in Kortnee's best interests, or would be significantly detrimental to Kortnee, without showing that Downs would be an inappropriate parent.

■ ¶ 25 We recognize the necessity of interpreting § 25–415 in light of constitutional requirements. *Cf. McGovern,* 201 Ariz. at 178, ¶ 20, 33 P.3d at 512 (considering constitutional implications of grandparent visitation statute); *Jackson,* 199 Ariz. at 310, ¶ 14, 18 P.3d at 104 (same). We further recognize that in custody disputes between a fit legal parent and a third person, a parent's wishes concerning custody are entitled, at a minimum, to special weight as a measure of protection for the parent's constitutional right to rear the child. *Troxel v. Granville,* 530 U.S. 57, 70, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion).[5] However, in instances where a fit parent's right to rear her child may conflict with the child's best interests, the extent of a parent's constitutional right has not been precisely defined. According to

*Troxel,* in such settings, a parent's constitutional right to rear her child is thus best "elaborated with care," and "turns on the specific manner in which that [constitutional] standard is applied." *Id.* at 73, 120 S.Ct. 2054.

¶ 26 In such cases, the extent of the parent's constitutional right can only be determined by weighing that right against countervailing factors, if any, pertaining to the best interests of the child. Precluding an examination of the child's best interests until a parent's lack of fitness is established prevents the court from considering a child's best interests in giving appropriate weight to a fit parent's constitutional right to rear the child in circumstances where such rights are implicated.

¶ 27 In § 25–403(A), the legislature has already set forth the factors that any court must weigh in determining what is in the best interests of the child. Thus, while not preventing the courts from considering other factors, the legislature has also prevented the court from acting arbitrarily in ascertaining the interests of a child against which any parental claim of constitutional protection must be weighed. The first of the legislative factors, "[t]he wishes of the child's parent or parents as to custody," *see* A.R.S. § 25–403(A)(1), may provide the court with the opportunity in appropriate cases to give a parent's wishes the "special weight" required by the constitution in weighing it against the other specified statutory and relevant factors pertaining to the child's best interests. It is inappropriate to defer an examination of the child's best interests until parental inappropriateness is established.

¶ 28 It may be that Scheffler cannot raise a sufficiently significant question about Kortnee's best interests to overcome the statutory presumption, let alone outweigh Downs' potential constitutional right to rear Kortnee. But, that is a determination that can be made

5. *Troxel* defines a "fit" parent as one who "adequately cares for his or her children." 530 U.S. at 68, 120 S.Ct. 2054. The court here never made an explicit finding whether Downs was a "fit" parent under the definition set forth in *Troxel.* However, *Troxel* was decided in the context of a grandparent's demand for visitation not custody, and thus presumably involved a less

intrusive demand upon a fit parent's constitutional right than would a grandparent's demand for custody. Scheffler's appeal does not present the question whether the substantive and procedural protections afforded to legal fit parents by the Arizona custody statutes were applied or were capable of being applied to adequately meet constitutional requirements in this context.

only after Scheffler has been allowed to develop her case pertaining to Kortnee's best interests. This would include the ability to cross-examine Culek concerning the reasons for her conclusion that Kortnee's best interests are served by maternal custody.

¶ 29 Given the strong statutory and public policies in this state that make a child's best interests the pre-eminent consideration in custody determinations, *see Hays*, 205 Ariz. at 102, ¶ 18, 67 P.3d at 698, and *Troxel*'s recognition that application of a fit parent's constitutional rights is fact-sensitive, we decline to interpret § 25–415 in a way that would justify limiting Scheffler's right to cross-examine Culek about the reasons for her best interests determination.

¶ 30 Accordingly, on remand the trial court should hear the reasons for Culek's opinion. If the court has concerns about making the information public, an *in camera* inquiry in the presence of counsel would be an appropriate procedure for hearing the bases of Culek's opinion. *See City of Tucson v. Superior Court*, 25 Ariz.App. 512, 515, 544 P.2d 1113, 1116 (1976) (explaining that an *in camera* inquiry "protects information from improper disclosure and at the same time gives a litigant access to essential information"). However, Scheffler, as an appropriate party to this case, cannot be precluded from the opportunity to hear and challenge the reasons for the expert's conclusions. Scheffler was prejudiced by the court's refusal to permit cross-examination of the court-appointed expert. Accordingly, we reverse and remand to permit such cross-examination. *See Barsema v. Susong*, 156 Ariz. 309, 314, 751 P.2d 969, 974 (1988) (holding that the failure to allow cross-examination is reversible error when it results in prejudice); *State v. Williams*, 132 Ariz. 153, 159, 644 P.2d 889, 895 (1982) (stating that an appellate court will only overturn a trial court's decision to limit the scope of cross-examination if the limitation is unreasonable); *see also Youngblood v. Austin*, 102 Ariz. 74, 77, 424 P.2d 824, 827 (1967) (stating that courts permit wide latitude in the cross-examination of expert witnesses).

## C. The Trial Court Failed to Address Grandparent Visitation.

¶ 31 Because we are remanding this matter to the trial court we briefly address Scheffler's alternative request for grandparent visitation.

¶ 32 The trial court may award grandparent visitation if the grandparent meets the statutory requirements for visitation. *See* A.R.S. § 25–415(C); A.R.S. § 25–409 (Supp. 2003). While the court is obliged, in considering the request for grandparent visitation, to do so consistently with any constitutional right Downs may have to direct Kortnee's upbringing, *see, e.g., McGovern*, 201 Ariz. at 177, ¶ 16, 33 P.3d at 511; *Jackson*, 199 Ariz. at 310, ¶ 12, 18 P.3d at 104, Downs did not respond to or otherwise contest Scheffler's alternative request for visitation.

¶ 33 Both experts and even Downs testified that Kortnee and Scheffler have a close bond. Scheffler has been Kortnee's primary custodial guardian for most of Kortnee's life, and both experts testified that a move from Scheffler's house would be a substantial change for Kortnee. Nevertheless, the trial court's order did not provide Scheffler any visitation outside of the time she was to supervise Kortnee's father's parenting time every fourth weekend and two weeks in the summer. Accordingly, on remand the trial court should consider Scheffler's request for grandparent visitation pursuant to A.R.S. §§ 25–415(C) and 25–409.

## CONCLUSION

¶ 34 We reverse the trial court's custody order and remand to allow the trial court to enter findings of fact as to Kortnee's best interests pursuant to A.R.S. § 25–403(A) and (J), and to permit Scheffler to cross-examine Culek as to the reasons for her conclusion that maternal custody is in Kortnee's best interests. We also remand to allow the trial court to consider Scheffler's request for grandparent visitation pursuant to A.R.S. §§ 25–415(C) and 25–409. In light of our disposition of these issues, we do not reach Scheffler's claim that she rebutted the statu-

tory presumption in favor of legal parent custody with clear and convincing evidence.

CONCURRING: JON W. THOMPSON and JOHN C. GEMMILL, Judges.