NOTICE: NOT FOR OFFICIAL PUBLICATION. UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

DIANE CAROL ATKISON, *Petitioner/Appellant*,

*v.*

ROBERT ANTHONY SHAFER, *Respondent/Appellee*.

No. 1 CA-CV 22-0004 FC
FILED 12-29-2022

Appeal from the Superior Court in Maricopa County
No. FC2019-007092
The Honorable Mark H. Brain, Judge

**AFFIRMED IN PART/REMANDED**

COUNSEL

Gillespie, Shields, Goldfarb & Taylor, Phoenix
By Mark A. Shields (argued), David L. Goldfarb
*Counsel for Petitioner/Appellant*

Curry, Pearson & Wooten, PLC, Phoenix
By Daniel S. Riley[1]
*Counsel for Respondent/Appellee*

---

[1]     This court thanks Mr. Riley for his *pro bono* service.

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

¶1        Diane Carol Atkison ("Grandmother") appeals from the superior court's denial of her petition for *in loco parentis* legal decision-making and her motion to amend. We find no reversible error and affirm the court's parenting determination. We remand for the court to determine the child support award during the interim period.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Liam[2] is Grandmother's maternal grandson, and his father is Robert Anthony Shafer ("Father"). Liam's mother ("Mother") and Father had a turbulent and volatile relationship. In 2016, Father petitioned for legal decision-making and parenting time. Grandmother intervened in Father's case (Maricopa County cause number FC 2016-008657), petitioning for *in loco parentis* rights. The court appointed a best-interests attorney for the child. The best-interests attorney began a dependency action against Mother and Father. Eventually, the dependency petition, Father's legal decision-making petition, and Grandmother's *in loco parentis* petition were dismissed without the entry of a parenting order.

¶3        Father relocated to California. Father took Liam to California for a short period, but Liam returned and remained with Mother in Arizona. In August 2019, Mother was hospitalized following a cardiac arrest. She died two weeks later.

¶4        Before Mother's death, Grandmother again petitioned for *in loco parentis* decision-making under A.R.S. § 25-409, alleging that Father had a significant history of domestic violence and drug abuse. She asked the court to grant her legal decision-making and parenting time for Liam and order Father to undergo drug testing. She also moved for temporary orders.

---

[2]        We use a pseudonym to protect the child's identity.

¶5　　　　In September 2019, after an evidentiary hearing, the court issued temporary orders that designated Grandmother as the sole legal decision-maker with physical custody of Liam but allowed Father supervised parenting time. The court also ordered Father to submit to random drug testing at least eight to ten times per month. The court warned Father that each failure to participate might be considered a failed test, and he should disclose any prescriptions that could lead to a positive test result. Finally, the court appointed a behavioral health professional to conduct a comprehensive family evaluation.

¶6　　　　In April 2021, the parties proceeded to trial. They presented evidence that Father completed nearly 30 drug tests during the previous 19 months, four of which were positive. The first positive result occurred in September 2019, when Father tested positive for amphetamines, benzodiazepines, cannabinoids, and fentanyl. He began an inpatient treatment program just over a month later.

¶7　　　　Yet Father tested positive for cocaine, fentanyl, and methadone in March 2020. He testified that this was the only hair follicle test conducted by taking a sample from his leg instead of his chest or armpit, which may have had a longer detection window because he sometimes trimmed his body hair but never his legs. He also presented a letter from an addiction psychologist stating that different body areas may yield different results. Father completed three negative urinalysis tests and a negative hair follicle test two weeks following the positive hair follicle test.

¶8　　　　In May and July 2020, Father tested positive for amphetamines. As for these tests, he testified that he had a prescription amphetamine medication that he had since stopped taking. Father added that after completing the inpatient treatment program, he saw a physician for monthly urine tests and a prescription opioid antagonist. He maintained that he had been clean and sober.

¶9　　　　Grandmother presented evidence of Father's domestic violence. In November 2017, Father was arrested for assaulting Mother. He was released but ordered to have no contact with Mother. But a week later, police responded to a call from Mother's neighbor, who could hear Mother and Father fighting inside Mother's apartment. The responding officer concluded the argument was only verbal but arrested Father for violating the no-contact order.

¶10　　　　Grandmother presented text messages from April 2018 between Mother and Mother's brother, in which Mother stated Father struck her in the head and knocked her out eight times. Grandmother alleged that Father assaulted Mother again in May 2018, leading police to arrest both Mother and Father for domestic violence.

¶11　　　　Grandmother presented photos of Mother's injuries, including when Father allegedly broke Mother's hand in July 2018. Grandmother offered text messages between Mother and Father, in which Mother accused Father of tackling and belittling her in front of Liam, to which Father replied, "Everything you do and say in front [of] him is perfectly ok but when [I] do [it it's] the end [of] the world." Grandmother testified that this was Father's admission "to doing it in front of [Liam]."

¶12　　　　The superior court denied Grandmother's *in loco parentis* petition. The court began its analysis by stating that a grandparent may be awarded third-party rights if it finds that all the requirements of A.R.S. § 25-409(A) are met. The court acknowledged the presumption that it is in a child's best interests to remain with the natural parent. The court determined that the only disputed element under the statute was whether it would be significantly detrimental to the child to remain in Father's care.

¶13　　　　Before proceeding to the best-interests analysis, the court rejected Grandmother's arguments under the domestic violence provisions of A.R.S. § 25-403.03. The court "simply disagree[d]" with Grandmother that domestic violence was relevant to the case. The court recognized that A.R.S. § 25-403.03(B) requires courts to "consider evidence of domestic violence as being contrary to the best interests of the child" and continued:

> Of course it is. But the goal is to keep the child from being exposed to domestic violence, not to penalize a parent who once engaged in it but cannot anymore. Accordingly, the Court concludes that father's history of domestic violence with mother (which was sometime[s] mutual) is not pertinent to the current dispute.

¶14　　　　The court then analyzed the best-interests factors under A.R.S. § 25-403. The court found that Liam had good relationships with Grandmother, Father, and his extended family. It further found that Liam had adjusted well to living with Grandmother in Phoenix. The court added that Liam, who was five years old at the time, was too young for his wishes to be considered. And the court found that Liam and Grandmother were in

4

good mental and physical health, as was Father, except for Father's prior drug abuse history.

¶15        The court then addressed Father's drug use, finding that Father had "undoubtedly" abused various drugs. The court acknowledged that Father tested positive in March 2020 but noted that he submitted several negative drug tests since January 2020. The court also recognized Grandmother's criticism of Father's compliance with the original drug-testing order and her concern that Father could have used fentanyl without detection. But "[h]aving studied the matter, the Court conclude[d] that father ha[d] made a good faith effort at complying with the Court's intended drug testing regimen[]."

¶16        The court also found "that the testing Father completed was reasonably calculated to ensur[e] that he was not using illicit substances." Finally, the court found credible Liam's paternal grandfather's testimony that Father's behavior and demeanor had recently improved and were "inconsistent with continued drug use."

¶17        In conclusion, the court found "that it would not be significantly detrimental to [Liam] to be placed in the care of his father" and denied Grandmother's petition.

¶18        Grandmother moved to amend the judgment, asking the court to grant her visitation and order Father to continue drug testing. She asserted that Father had agreed to both parenting requests in his pretrial statement. The court denied the motion.

¶19        First, the court found that the visitation issue was not tried by consent. The court explained that, although Father stated pretrial that Grandmother should have visitation rights, Father also noted that Grandmother did not request visitation, even as an alternative theory. Second, the court declined to order Father to continue drug testing because the court lacked the authority to impose such a requirement after denying a third-party petition under A.R.S. § 25-409.

¶20        Grandmother appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1) and (2).

## DISCUSSION

¶21        We review an award of legal decision-making and parenting time for an abuse of discretion. *Olesen v. Daniel*, 251 Ariz. 25, 29, ¶ 14 (App. 2021). A court abuses its discretion if it commits an error of law when

reaching a discretionary decision or if the record does not support its decision. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). We accept the court's factual findings unless clearly erroneous but review legal conclusions *de novo*. *Id.*

**¶22**        Grandmother raises several arguments for reversal, and we will address each in turn. But we must first address the court's application of the statutory requirements for third-party petitions, an issue not raised by either party. The court's analysis began with a statement that third-party rights may be awarded upon a showing of the four elements under A.R.S. § 25-409(A). But A.R.S. § 25-409(A) provides that "[t]he court shall summarily deny a petition unless it finds that the petitioner's *initial pleading* establishes" the four elements. A.R.S. § 25-409(A) (emphasis added). As a result, the statute sets forth a pleading standard. *See Chapman v. Hopkins*, 243 Ariz. 236, 240, ¶ 16 (App. 2017). Only after determining that the petition establishes each requirement will the court reach the merits. *Id.* at ¶ 17.

**¶23**        The merits standard is instead outlined in A.R.S. § 25-409(B), which provides that there "is a rebuttable presumption that awarding legal decision-making to a legal parent serves the child's best interests." And the presumption may be rebutted only "by clear and convincing evidence that awarding legal decision-making to a legal parent is not consistent with the child's best interests." A.R.S. § 25-409(B). When making this determination, the court should consider the best-interests factors enumerated in A.R.S. § 25-403(A). *Chapman*, 243 Ariz. at 241, ¶ 18. "Legal parent" means a biological or adoptive parent whose parental rights have not been terminated. A.R.S. § 25-401(4). And the parties do not dispute that Father is Liam's legal parent.

**¶24**        Here, the court's order appears to use A.R.S. § 25-409(A) as the framework for analyzing the merits, which was improper. But the court did not commit reversible error in this regard because, substantively, the court considered the best-interests factors under A.R.S. § 25-403(A) when reaching its conclusion. *See* Ariz. R. Fam. Law P. 86 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); *Wisniewski v. Dolecka*, 251 Ariz. 240, 242, ¶ 7 (App. 2021).

**A.    The Superior Court Made Sufficient Findings Under A.R.S. § 25-403 Regarding the Ultimate Facts in Dispute.**

**¶25**        Grandmother first argues that the court failed to make specific best-interests findings on the record. As mentioned, the court must

6

evaluate the child's best interests when ruling on a third-party petition under A.R.S. § 25-409. *See Chapman*, 243 Ariz. at 241, ¶ 18; *Downs v. Scheffler*, 206 Ariz. 496, 500, ¶¶ 12–14 (App. 2003). In doing so, the court must consider the best-interests factors enumerated in A.R.S. § 25-403(A). *Chapman*, 243 Ariz. at 241, ¶ 18. And when considering the best-interests factors, "the court shall make specific findings on the record." A.R.S. § 25-403(B). Grandmother asserts that the court's order lacks the requisite findings.

¶26 The primary purpose for requiring a court to make express findings of fact and conclusions of law is to allow the appellate court to determine exactly what issues were decided and whether the lower court correctly applied the law. *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 295–96, ¶ 13 (App. 2020); *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 24. Findings also serve other important purposes, "including prompt[ing] judges to consider issues more carefully because they are required to state not only the end result of their inquiry, but the process by which they reached it." *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 538, ¶ 18 (App. 2018) (alteration in original) (quotation marks omitted) (quoting *Miller v. Bd. of Supervisors*, 175 Ariz. 296, 299 (1993)). To survive a challenge to the adequacy of the superior court's findings, "[i]t must be clear [from the findings] how the court actually did arrive at its conclusions." *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996) (alteration in original) (quoting *Elliott v. Elliott*, 165 Ariz. 128, 135 (App. 1990)).

¶27 A court does not have to detail *each* fact that supports its ruling, *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451–52, ¶ 19 (App. 2007), but its findings must include the "ultimate facts," *Ruben M.*, 230 Ariz. at 241, ¶ 25. "[U]ltimate facts are *at least* the essential and determinative facts on which the conclusion was reached. They are the controlling facts, without which the court cannot correctly apply the law in resolving the disputed issues in the case." *Logan B.*, 244 Ariz. at 537, ¶ 15 (alteration in original) (quotation marks omitted) (quoting *Miller*, 175 Ariz. at 300); *Ruben M.*, 230 Ariz. at 241, ¶ 25 ("Findings must include 'all of the "ultimate" facts—that is, those necessary to resolve the disputed issues.'" (quoting *Elliott*, 165 Ariz. at 132)). We review the sufficiency of findings of fact *de novo* as a mixed question of fact and law. *Francine C.*, 249 Ariz. at 296, ¶ 14.

¶28 The superior court's order contains the required findings. The court began by stating, "As to best interests, the factors of A.R.S. § 25-403 are instructive, and the Court will discuss the evidence surrounding the applicable factors." The court then made findings about the relationship and interactions between Liam and the parties, Liam's adjustment to life at

home and in school, whether Liam was of suitable age to have his wishes considered, and the physical and mental health of the parties. The court also discussed Father's history of domestic violence and drug abuse. Although the analysis takes on an unenumerated narrative form, it tracks A.R.S. § 25-403 and addresses the relevant factors under the statute. *See also Downs*, 206 Ariz. at 500, ¶¶ 12–14 (Not all factors apply to third-party petitions.). And Grandmother identifies no rule or law that governs how courts must format a best-interests finding. We thus conclude that the court made the required findings.

## B. The Superior Court Did Not Commit Reversible Error in its Domestic Violence Findings.

**¶29** Grandmother argues that the superior court erred by failing to apply the presumption outlined in A.R.S. § 25-403.03(D) and finding that Father's history of domestic violence is "not pertinent" to the dispute.

**¶30** Arizona Revised Statutes Section 25-403.03(D) creates a rebuttable presumption against domestic violence perpetrators:

> If the court determines that a parent who is seeking sole or joint legal decision-making has committed an act of domestic violence against the other parent, there is a rebuttable presumption that an award of sole or joint legal decision-making to the parent who committed the act of domestic violence is contrary to the child's best interests. This presumption does not apply if both parents have committed an act of domestic violence.

A.R.S. § 25-403.03(D). Grandmother argues the court erred by failing to apply this presumption against Father because Father "was seeking and was granted legal decision-making in this case" and has committed multiple acts of domestic violence against Mother.

**¶31** Grandmother's argument fails, and the presumption does not apply for two reasons. First, Grandmother misstates the case's procedural posture because Father was not "seeking" legal decision-making. Instead, Grandmother sought legal decision-making as a third-party petitioner under A.R.S. § 25-409. The burden was on her to show "by clear and convincing evidence that awarding legal decision-making to [Father was] not consistent with the child's best interests." A.R.S. § 25-409(B). Grandmother cites *Olesen v. Daniel*, 251 Ariz. 25 (App. 2021) to show that this presumption applies in third-party cases. Grandmother is mistaken.

¶32       In *Olesen*, the parents divorced, and the mother was awarded sole legal decision-making. *Olesen*, 251 Ariz. at 27, ¶¶ 2, 4. Thus, when the father later petitioned to modify the parenting plan, and the grandparents intervened, the father was still "a parent who [was] seeking sole or joint legal decision-making" under A.R.S. § 25-403.03(D). *See Olesen*, 251 Ariz. at 27–29, ¶¶ 6, 13. Here, no parent was seeking legal decision-making. As a result, the presumption under A.R.S. § 25-403.03(D) did not apply.

¶33       Second, Grandmother ignores the court's finding that Mother also committed an act of domestic violence. The presumption under A.R.S. § 25-403.03(D) does not apply "if both parents have committed an act of domestic violence." Here, the court found that "father's history of domestic violence with mother . . . was sometime[s] mutual." Although Grandmother contends that Father is the only parent with a history of domestic violence, the court's finding is supported by the testimony that police arrested both Mother and Father for domestic violence in May 2018. Again, the presumption under A.R.S. § 25-403.03(D) does not apply.

¶34       Grandmother also argues that the court erred by concluding that domestic violence was "not pertinent" to the case, especially because the court found Father engaged in domestic violence but "cannot anymore."

¶35       When analyzing the child's best interests, the court should consider "[w]hether there has been domestic violence or child abuse pursuant to § 25-403.03." A.R.S. § 25-403(A)(8). In doing so, the court must give domestic violence substantial consideration:

> The court shall consider evidence of domestic violence as being contrary to the best interests of the child. The court shall consider the safety and well-being of the child and of the victim of the act of domestic violence to be of primary importance. The court shall consider a perpetrator's history of causing or threatening to cause physical harm to another person.

A.R.S. § 25-403.03(B); *see Christopher K. v. Markaa S.*, 233 Ariz. 297, 300, ¶ 16 (App. 2013). Given the statute's mandate, it would be error to ignore Father's uncontroverted domestic violence history. That said, the court here did not summarily disregard the evidence. Instead, it acknowledged that domestic violence generally conflicts with the child's best interests but concluded that "the goal is to keep the child from being exposed to domestic violence, not to penalize a parent who once engaged in it but

cannot anymore." Thus, despite the court's language that Father's domestic violence was "not pertinent," it is clear from the order that the court considered Father's prior acts of domestic violence as required by A.R.S. §§ 25-403(A)(8) and 25-403.03(B).

¶36 That said, we agree with Grandmother that there is no support for the court's conclusion that Father "cannot" commit acts of domestic violence anymore. Still, the record shows Father committed domestic violence acts only against Mother, and the last incident occurred in 2018.[3] Mother has since died, and Father now lives with his girlfriend and her daughter. Grandmother did not present evidence that Father has engaged in domestic violence against either of them. And the only evidence that any domestic violence occurred in front of Liam is an ambiguous text from Father to Mother and Grandmother's testimony that Father admitted in the text "to doing it in front of [Liam]." As a result, there is record evidence to support findings that Liam has not been exposed to domestic violence, and Father's abstinence from domestic violence since 2018 is likely to continue.

¶37 Of course, we may not infer findings from the court's ultimate decision. *DeLuna*, 247 Ariz. at 424, ¶ 16. And when a court's order lacks findings, the order must be reversed. *See, e.g.*, *In re Marriage of Diezsi*, 201 Ariz. 524, 526, ¶ 5, (App. 2002); *Downs*, 206 Ariz. at 501, ¶ 19; *Christopher K.*, 233 Ariz. at 301, ¶ 19; *DeLuna*, 247 Ariz. at 424–25, ¶¶ 16–19. But the court's order here does not lack findings. The court's order weighed the child's lack of exposure to domestic violence and the death of Father's only victim. Thus, the court's findings are sufficient for us "to determine that the court considered the child's best interests." *See Diezsi*, 201 Ariz. at 526, ¶ 5; *see also O'Hair v. O'Hair*, 109 Ariz. 236, 240 (1973) (The appellate inquiry is "whether the trial court had before it evidence which might reasonably support its action viewed in the light most favorable to sustaining the findings."). Thus, although the order was inartful at times about Father's domestic violence, we find no reversible error in the court's conclusion. *See* Ariz. R. Fam. Law P. 86.

---

[3] At oral argument, Grandmother's counsel contended the last incident of domestic violence occurred in August 2019 and cited Exhibit 50. But when trial counsel offered Exhibit 50 into evidence, the superior court deferred admission until after it had reviewed the exhibit. The court never admitted Exhibit 50, and it is not in the record on appeal.

**C.     The Superior Court Did Not Abuse Its Discretion by Concluding that Father Rebutted the Substance Abuse Presumption Under A.R.S. § 25-403.04.**

¶38     Grandmother also argues that the court erred by concluding that Father rebutted the presumption under A.R.S. § 25-403.04. Section 25-403.04(A) creates a rebuttable presumption that it is not in the child's best interests to award legal decision-making to a parent who has abused drugs within a year of the petition's filing. To determine whether the parent has rebutted that presumption, the court must consider the lack of drug offenses, the results of random drug tests over six months, and the results of drug screenings. A.R.S. § 25-403.04(B). It is uncontested that Father abused drugs until as recently as late 2019, and thus the presumption applies against him.

¶39     In September 2019, the court ordered Father to submit to random drug testing at least eight to ten times per month. The parties proceeded to trial in April 2021. Father should have taken around 150 to 190 random drug tests before the trial under the order. But at the trial, he submitted evidence of fewer than 30 completed drug tests, four of which were positive. Only one test appears to have been random. Father skirted the court's drug testing order. But the court found that Father "made a good faith effort at complying with the Court's intended drug testing regimen[]" and "that the testing Father completed was reasonably calculated to ensur[e] that he was not using illicit substances." The court ultimately found that Father had rebutted the presumption against him.

¶40     Grandmother argues that the court abused its discretion by "dismissing" Father's drug use and failure to comply with the court's order. But she cites no authority supporting the claim that Father's failure to comply with the court's drug-testing order precluded him from rebutting the statutory presumption. The question on appeal is not whether Father strictly adhered to the court's drug-testing order but whether there is support in the record for the court's conclusion that Father rebutted the presumption. *See DeLuna*, 247 Ariz. at 423, ¶ 9.

¶41     We find that there is sufficient record support. Although Father only tested twice in 2019, the court gave weight to the more recent "string of drug tests . . . commencing in January 2020 which [were] negative" with some exceptions. And as for the exceptions, Father provided a plausible explanation for each of the three positive tests since January 2020 that the court could have found credible. Likewise, the court accepted testimony that Father's behavior and demeanor had improved and were

"inconsistent with continued drug use." So the court did not abuse its discretion by concluding that Father rebutted the presumption under A.R.S. § 25-403.04.

## D.  The Superior Court Did Not Abuse Its Discretion by Denying Grandmother's Petition.

¶42        Grandmother argues that the court abused its discretion by denying her petition because it erred in its analysis of the domestic-violence and drug-abuse presumptions. As discussed, the court did not err by declining to apply the domestic-violence presumption or finding that Father had rebutted the drug-abuse presumption. But Grandmother urges us to hold under A.R.S. § 25-409(B) that "[a]s a matter of law, it was clearly contrary to the child's best interests to be placed in the physical custody of a domestic abuser and a drug addict."

¶43        Section 25-409(B) creates a rebuttable presumption that it is in the child's best interests to remain in the care of a legal parent. And it explicitly burdens the third-party petitioner to rebut that presumption with clear and convincing evidence. A.R.S. § 25-409(B). Having established that the court did not err under A.R.S. §§ 25-403.03 and -403.04, the burden fell on Grandmother to show by clear and convincing evidence that the best-interests factors under A.R.S. § 25-403(A) weighed against placing Liam in Father's care. A.R.S. § 25-409(B).

¶44        The superior court held that Grandmother failed to meet her burden. We cannot hold that Grandmother met her burden simply because there is evidence of Father's past drug abuse and domestic violence. A parent's health and history of domestic violence are two factors the court should consider when analyzing the child's best interests. A.R.S. § 25-403(A). As stated, the court did not abuse its discretion by generally finding that the best-interests factors favored placing Liam in Father's care. We thus conclude that Grandmother failed to meet her burden under A.R.S. § 25-409(B), and we affirm the court's denial of her petition.

## E.  The Superior Court Did Not Err by Declining to Order Continued Drug Testing or Visitation.

¶45        After the court denied her petition, Grandmother moved to amend the judgment. *See* Ariz. R. Fam. Law P. 83. She asked the court to order Father to continue drug testing and grant Grandmother visitation. The court denied the motion, finding that the court lacked the authority to order continued drug testing and that the parties had not litigated the visitation issue.

¶46 Grandmother argues that the court erred by concluding it lacked the authority to order continued drug testing. She claims that the source arises out of Arizona Rule of Family Law Procedure 95, which provides that "[i]n a case involving legal decision-making or parenting time, the court may order substance abuse screening and random testing of a party" if that party has abused drugs. Father counters that Rule 95 applies when there is "a case involving legal decision-making or parenting time," and any authority derived from Rule 95 terminated upon the denial of Grandmother's petition.

¶47 We agree with Father that once the court denied Grandmother's petition, there was no longer "a case involving legal decision-making or parenting time." Moreover, Rule 95 is a "procedural rule and cannot enlarge the court's authority beyond that granted by statute." *Paul E. v. Courtney F.*, 246 Ariz. 388, 398, ¶ 40 (2019). Grandmother fails to identify an applicable statute allowing the court to order continued drug testing after it denied her petition. The court thus did not err by declining to order ongoing drug testing.

¶48 Grandmother also argues that the court erred by denying her visitation. Grandmother requested "*in loco parentis* custody" in her petition. She did not request visitation. Her argument is based partly on Father's pretrial statement, in which he stated he was "agreeable" to a visitation schedule recommended by the behavioral health professional. But Father also noted that Grandmother did not ask for visitation, "even as an alternative theory." The pretrial statement also contains a section for stipulations or agreements of the parties, under which Father stated, "None."

¶49 Grandmother also relies on Father's trial testimony that the parties had "already agreed" to the visitation schedule set up by the behavioral health professional. Father gave the testimony in response to a question about how he could assure the court that he would not cut off Grandmother from Liam should the court order that Liam stay in Father's care. Father did not agree to court-ordered visitation.

¶50 Although it appears the parties have discussed and perhaps even agreed to visitation outside the scope of the litigation, we ultimately agree with the superior court that the visitation issue was not litigated. The court, therefore, did not abuse its discretion by declining to award visitation.

**F.      The Superior Court Erred by Declining to Determine Child Support for the Interim Period.**

¶51      Finally, Grandmother argues the court erred by failing to determine child support when it issued the temporary orders placing Liam in her care.

¶52      In her pretrial statement, Grandmother asked the court to enter a judgment for child support when Liam was in her care during the litigation. The court's order denying Grandmother's petition did not address the interim child-support claim. This was error.

¶53      Under A.R.S. § 25-403.09, the court must determine the child support amount when entering "any parenting time order" under the legal decision-making and parenting time statutes. The statutory mandate includes a temporary order such as the court issued here. *See* A.R.S. § 25-404. So the court should have determined child support when issuing the interim orders.

¶54      Section XII(C) of the guidelines states:

> If a child lives with a third-party caregiver under a court order, an administrative placement by a state agency, or other color of authority, the third-party caregiver is entitled to receive child support payments from each parent on the child's behalf. When calculating the amount of child support to be awarded to a third-party caregiver, the third-party caregiver's expenses are considered under Section III.B.3 through III.B.6 above, but not the third-party caregiver's income.

A.R.S. § 25-320.

¶55      At the hearing, the court had Father's income information and the other information necessary to determine his child support obligation to Grandmother for taking care of Liam during the interim period. If the court intended to deviate from the guidelines to enter a zero-child-support award, it must state the reasons on the record. *See* A.R.S. § 25-320(D); *Milinovich v. Womack*, 236 Ariz. 612, 618, ¶ 20 (App. 2015). The court could not ignore the child-support request. Contrary to Father's argument, Grandmother has not waived her child-support argument by failing to raise it in her post-judgment motion. *See Francine C.*, 249 Ariz. 289, 297, ¶¶ 18–19 (A party cannot waive mandatory findings imposed by statute.).

¶56            We remand the case for the court to address Grandmother's interim child-support claim.

## ATTORNEY'S FEES

¶57            Grandmother requests attorney's fees under A.R.S. § 25-324. Per our discretion, we decline to award fees. As the prevailing party, Father is awarded his costs on appeal upon compliance with ARCAP 21.

## CONCLUSION

¶58            We affirm the parenting portion of the judgment. We remand for the court to enter the appropriate child-support award.

